## MARY A. CLARK, Infant by Her Father and Next Friend James Clark, *vs.* THE SOUTHERN CAN COMPANY.

*Infants; negligence; damages; suit by next friend; Code, Art. 75, sec. 56; power to settle. Judgments; order dismissing suit; "agreed and settled"; fraud; motion to strike out; collateral attack.*

Under the provisions of section 56 of Article 75 of the Code of Public General Laws, one who brings suit as a next friend for the benefit of an infant for injury received has the power to compromise and settle the case.                    p. 92

A judgment rendered by a Court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity, verity or binding effect by parties or privies in any collateral action or proceeding.                    p. 92

This applies as well to orders or judgments dismissing the cause and judgments or orders for costs.                    p. 92

Application to strike out a judgment alleged to have been fraudulently obtained must be made within a reasonable time after the discovery of the facts which are supposed to establish fraud.                    p. 95

The release of a case and the orders based thereon upon which an entry of "agreed and settled" was made, under the eye and sanction of the Court, can not be annulled and set aside in collateral proceedings.                    p. 95

The remedy was either a motion to strike out the judgment, filed in due season, or by a direct proceeding in equity for the annulment of the judgment, instituted within a reasonable time after the discovery of the facts complained of as fraudulent.                    p. 97

*Decided June 22nd, 1911.*

Appeal from the Court of Common Pleas of Baltimore City (Stump, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Pattison, Urner and Stockbridge, JJ.

*Robert F. Leach, Jr.,* and *John H. Richardson,* for the appellants.

*J. Morfit Mullen* and *W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellee.

Pattison, J., delivered the opinion of the Court.

In this case the appellant, an infant, by her father and next friend, brought suit in the Court of Common Pleas, against the appellant company to recover for personal injuries sustained by her on or about March 1st, 1909, while employed by the company in the operation of a cap cutting machine.

To this action the defendant company pleaded, first, that it did not commit the wrong alleged, and second, "that the father and next friend of the said infant plaintiff, did heretofore institute a suit at law in this Court for the benefit of said infant, based upon the same cause of action sued for herein, and that the said father and next friend of said infant did compromise and settle said suit and said cause of action, and that the said father and next friend did before this suit, by his deed under seal, release the defendant from any and all claims that may or might have existed against it by reason of the cause of action herein sued for.

The plaintiff joined issue on the first plea, and replied to the second, alleging that the release mentioned therein was procured by the deceit, misrepresentation and fraud of the defendant, its agents, servants or employees. The defendants in their rejoinder thereto denied the facts alleged in the replication.

In the course of the trial eight exceptions were taken by the plaintiff to the admission of testimony and at the conclusion of the plaintiff's case four prayers were submitted to the Court by the defendants. The Court was asked in the first

prayer to instruct the jury that there was no legally sufficient evidence to entitle the plaintiff to recover; in the second that the accident was caused by the negligence of the plaintiff; in the third, that as the uncontradicted evidence in the case showed the institution, compromise and settlement by James Clark, father and next friend of the plaintiff, of a former suit in the same Court and for the same accident as alleged in the second plea, the verdict of "the jury must be for the defendant, because under the pleadings in this case there is no evidence legally sufficient to show fraud, misrepresentation or deceit on the part of the defendant, its agents or servants in the procurement of the compromise and settlement of said suit;" and by the fourth prayer, the Court was asked to instruct the jury as follows:

"That as the following facts appear from the plaintiff's own testimony in this case:

1. "The plaintiff herein by James Clark, her next friend, has heretofore brought a suit in this very Court to recover for the same accident, on account of which this suit is brought.

2. "That the said prior suit was compromised and settled by the said James Clark and a proper order of agreement and settlement was duly entered by order of the said James Clark's attorney in the said case, heretofore filed in this Court.

3. "That the said order to enter the said case agreed and settled is still valid and subsisting and has never been attacked by any proceeding instituted directly for that purpose.

"Therefore the verdict of the jury must be for the defendant."

The Court granted all of said prayers, to the granting of which the appellant excepted, thus making the ninth exception.

We will first consider the ruling of the Court in granting the fourth prayer.

This accident occurred on the first day of March, 1909. An attorney, Eldridge H. Young, was promptly consulted, and on the 18th day of the same month filed by titling two suits, one on behalf of the infant for the injuries suffered by her, and the other on behalf of the father for the loss of his daughter's services. Five days thereafter, on the 23rd day of March, the plaintiff, for a nominal consideration of one dollar as therein stated, executed under seal a release to the defendant company releasing and discharging it from any and all liability by reason of said injuries. In this release the plaintiff alleges that she was injured on or about the 1st day of March, 1909, while in the employment of the defendant company, under circumstances, which as she claimed, rendered the company liable to her in damages, although such liability was, as therein stated, denied by the company. It further stated that the execution of the release was pursuant to a desire of both parties that the matter should be settled and adjusted. In addition thereto the father, likewise, executed, under seal, to the defendant company a release wherin he, in consideration of the said sum of one dollar paid to his daughter at his request, acknowledged full satisfaction of all claims out of said injuries and released the said company of any liability by reason thereof.

Some days thereafter Eldridge H. Young, counsel for the plaintiff, was notified by postal card stamped as of the 27th of March, 1909, written by the sister with the knowledge of the plaintiff and with the name of the plaintiff signed thereto, that she wished to discontinue the suit against the defendant company. The card was worded as follows: "Mr. Young—I have changed my mind about the case against the Southern Can Company for Mary Clark, as he gave us steady work, and we took it and went to work, so I don't think will be any use bothering." Mr. Young promptly replied to this card and in answer thereto his client, a few days thereafter, called at his office and said to him that the agent of the company had come to her home. That the company had either turned her sister off, or was going to turn

her off from work unless the case was settled. That he promised they would take her back to work, and she had signed the paper settling the case.

Young having heard that the defendant company was represented by Gans & Haman, he called upon them and they likewise told him of the release, but stated that it was obtained before they were retained as counsel in the case. Young did not ask to see the release and it was not shown to him. He, however, discussed with them the payment of the costs of the case as well as the fee that he claimed should be paid to him by the defendant company, because, as he expressed it "they settled the case over my head." Messrs. Gans & Haman declined to consider the payment of a fee, but took under consideration the payment of the costs, and in a few days thereafter wrote him as follows: "Our client is willing to pay the costs in these cases provided the same are 'entered, agreed and settled.' They are not, however, willing to do anything more than this."

The next day Young called upon Gans & Haman and directed them to prepare the papers necessary to effect the settlement suggested by them in the aforegoing letter. In response thereto they prepared and sent to him, which was thereafter signed by his client, James Clark, father of the infant plaintiff, the following release:

"This release, made this 16th day of April, in the year 1909, by James Clark individually and also as next friend of and on behalf of his infant daughter, Mary Clark.

"Whereas, the said Mary Clark was injured on or about the first day of March, 1909, by working in the employment of the Southern Can Company, a corporation;

"And whereas, the said Mary Clark and the said James Clark claim the said injury was caused by the negligence of the said company or its agents, and two suits were subsequently brought against the said company in the Court of Common Pleas of Baltimore City, one by the said Mary Clark and the other by James Clark, her father;

"Whereas, the said Mary Clark and James Clark subsequently agreed to dismiss said suits and settle any claim that they or either of them have against said company;

"*Now, therefore, this Release Witnesseth,* That in consideration of the sum of one dollar, receipt whereof is hereby acknowledged, and other good and valuable considerations, the said James Clark, on his own behalf and also as father and next friend of his infant daughter, Mary Clark, and acting in her behalf, does hereby release, acquit, exonerate and discharge the said Southern Can Company, corporation, of and from any and all suit, action, claim or demand of any claim whatsoever that the said Mary Clark now has or may have against said company, or that he, the said James Clark, now has or may have against said company by reason of the loss of services of his said infant daughter.

"Witness the hand and seal of the said James Clark, individually and as father and next friend of the said Mary Clark.

JAMES CLARK,    (Seal)

*Individually, and as father and*

*as next friend of Mary Clark,*

*infant."*

Test:   J. C. WHEELER,
       E. H. YOUNG."

The above release was executed by Clark through and at the request of Young. Upon the execution of the release it was delivered to Gans & Haman with the orders to enter the cases "agreed and settled." The orders were filed April 21st, 1910, and upon that day, as shown by the docket entries, the case were marked "agreed and settled." The costs in the cases, including an appearance fee to Young of five dollars in each case, were paid by Gans & Haman.

The evidence further discloses that both the plaintiff and the sister returned to their work in the employment of the defendant company. The sister, after working for a short while, was taken sick, and by reason thereof remained at home for several weeks. When she returned she was assigned to work which she claimed was much less desirable than that which she had been doing, and complained to one, Funk, the employee in charge of the department in which she worked. He replied saying that it was all he had, and if she

did not like it she knew what to do; she left.   The plaintiff
remained at her work for a week thereafter, and, as testified
to by the sister, was sent home, but the cause therefor was
not stated.   The plaintiff in her testimony makes no refer-
ence to the fact she was sent home.

Late in the spring or early in the summer of the same
year (1909) the plaintiff again called upon Young, who
stated to him fully and, as he says, with greater detail than
she had hitherto done, what was said and done by Funk, the
agent of the defendant corporation at the time he, Funk,
procured for the company the execution of the release by her
and her father, and it is upon what was said and done by
Funk at such time that the plaintiff bases the allegation of
misrepresentation, deceit and fraud in the procurement of
the release then executed.   After making this statement she
asked him to institute another suit.   He declined, however,
to do so, saying the matter was out of his hands.   It was
then that the plaintiff accompanied by Young called upon
and retained Mr. Richardson, her present counsel.

This, as stated above, was late in the spring or early in
the summer of 1909, and although her counsel has since
that time been in full possession of the alleged misrepresenta-
tion and fraud said to have been employed by Funk, agent
of the company, in obtaining the release, no direct proceed-
ings have ever been taken to strike down the release and
thereby restore to her any and all right of recovery against
the defendant company for the alleged loss and injury which
might have existed prior to the execution of the release, and
not until the third day of March, 1910, fully nine months
after full knowledge of the alleged fraud and misrepresenta-
tion complained of were made known to him, her counsel,
and while the said release and the orders based thereon,
whereby the cases were marked settled and agreed, were in
full force and effect, did he take any action whatever to
right the wrong complained of, at which time he instituted
the present suit.

With this statement of the case we will now determine whether or not the fourth prayer should have been granted.

The compromise and settlement of the first suit involving the claim of the infant plaintiff for injury sustained by her, as above stated, by reason of the alleged negligence of the defendant company, was made under the provision of Article 75, section 56 of the Code of 1904. This section provides that "The next friend, or *prochein ami,* who shall have brought any suit at law for the benefit of any infant or infants, shall have authority to compromise and settle said suit and the cause of action.' We think under this provision of the Code that James Clark, the father, had in this case the power and authority to compromise and settle the suit so instituted by him.

As stated above, no direct proceedings have been instituted to annul and set aside the said release and the effect of the orders based thereon by which the suits were marked "agreed and settled," but by this collateral proceeding the plaintiff is attempting, in effect, to annul and set aside said release and the effect of the said orders so based thereon.

"A judgment rendered by a Court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity or binding effect, by parties or privies, in any collateral action or proceeding. 23 *Cyc.* 1055.

"The rule just stated as to the collateral impeachment of judgments applies generally to all varieties of judgments, decrees, or orders made by Courts of competent jurisdiction, in all kinds of judicial proceedings." Among those enumerated are "Orders or judgments dismissing the cause, and judgments or orders for costs," etc. 23 *Cyc.* 1057; *Cook's Lessee* v. *Carroll,* 6 Md. 112; *Edelen* v. *Edelen,* 6 Md. 288.

In *Cook's Lessee* v. *Carroll, supra,* which was an action of ejectment, the defendant offered testimony, which was admitted by the County Court, tending to prove that the patent upon which the plaintiff relied was obtained by fraud,

but upon appeal the ruling was reversed and the Court said: "We also think the Court erred in allowing testimony to be adduced for the purpose of showing fraud in the obtention of the patent. If there was any fraud or misrepresentation in causing its issue, it could only be inquired into by the tribunal which issued it, or by a Court of Equity. It is a well settled principle of law, that the acts of a competent tribunal cannot be reviewed collaterally. They are to be taken as a just and proper exercise of power in all other Courts." And JUDGE McSHERRY in the case of *Taylor and Bradford v. State, use of Miller,* 73 Md. 219, after quoting from *Cook's Lessee v. Carroll, supra,* the principle above stated, in speaking for this Court, said: "The same principle has been repeatedly applied, when in actions at law instituted by administrators, attempts have been made to show by way of defence that the letters of administration were obtained or procured by fraud. In every such instance this Court has held that the regularity of the appointment of an administrator by the Orphans' Court could not be impeached collaterally, even upon an allegation of fraud." *Raborg's Adm'x v. Hammond, Admr.,* 2 H. & G., 42; *Wilson v. Ireland,* 4 Md. 444.

In the case of *Taylor and Bradford v. State, supra,* the suit was against the sureties upon the bond of Handy, trustee. The trustee had made sale of the property mentioned in the deed of trust to him and an audit had been stated making distribution of the fund among the creditors of the grantor. The wife of the grantor, Mrs. Miller, was a creditor for a large amount, and upon her claim the auditor in stating his account allowed a dividend. Some of the other creditors filed exceptions to the allowance of the same, but these exceptions were subsequently withdrawn or overruled and the audit finally ratified by the Circuit Court for Baltimore City. The defendants in their third plea "alleged that Mrs. Miller employed Mr. Handy as attorney to establish for her her claims against the trust fund; that those claims were fraudulent and fictitious; that

Mrs. Miller agreed to compensate Mr. Handy for his services in securing the allowance of these claims; and that Mr. Handy, having an interest in their allowance, procured the withdrawal of the exceptions which had been filed by other creditors against these claims, and did·not as trustee resist their allowance, and that the claims thus allowed were the very ones on which the pending suit was brought." The demurrer was sustained, and this Court in affirming the Court below in its ruling upon the demurrer, said: "That fraud vitiates everything tainted by it, even the most solemn determinations of Courts of Justice, is an axiom of universal application, but like every other subject of judicial inquiry, fraud must be investigated in the proper forum and by appropriate methods of procedure. That the Circuit Court which passed the order of ratification had, and still has, full power to rescind it upon the due application and proof of fraud is undeniably true. But it is equally true that the allegation of fraud cannot, in such a case as this, confer upon a Court of Law the authority to strike down, or even question, an order of this character, passed by a Court of Equity within the admitted scope of its exclusive jurisdiction."

In the case of *Tabler* v. *Castle,* 22 Md. 94, the appellee filed a bill in equity, in the Circuit Court for Frederick County, to obtain a decree to sell certain real estate devised to the appellant for the purpose of satisfying from the proceeds thereof an alleged debt of the appellant's testator. The appellee founded his claim to relief upon a single bill executed by Tabler to him. In that case there was a record of a prior suit instituted on the law side of the Circuit Court for Frederick County by the appellee against Peter Tabler to recover the amount of this single bill, which was made thereafter the basis of the Equity proceeding. The record referred to showed that the suit so instituted was continued from time to time when the case was finally entered "settled," and the single bill impounded as the cause of action therein, where it was retained until some months after the death of

Peter Tabler, when it was withdrawn by the appellee, under order of the Court, without any explanation of the purpose or use to be made of it. This Court in discussing the case said: "The appellee, with an evident consciousness of the legal effect of this record on the cause of action exhibited, offered evidence to explain and qualify the entry of settlement, as well as to rebut the proper inferences therefrom; and the first question that presents itself, is, as to his competency to impeach collaterally, by any evidence whatever, the record thus produced as a bar to his claim. On this question we think the law is well settled. Had the docket entry, shown by the certified copy of the record in question, been made in fraud or by mistake, it could have been corrected by a proper application to the Court in that case, but no suggestion either of fraud or mistake was made.

In legal contemplation the entry of "settled" was made under the eye and with the sanction of the Court, and in our opinion, it should be considered and taken here as a judicial act, and for that reason, is no longer open to question or controversy in any collateral proceeding. From considerations of sound public policy as well as upon the authority of adjudged cases involving this question, we think the whole record, including the entry by which the cause was terminated, like all other judicial records when incidentally drawn in question, must be taken as absolutely true and as entitled to full faith and credit."

It is also well settled in this State that the application made to strike down a judgment alleged to have been fraudulently obtained "must be made within a reasonable time after the discovery of the facts which are supposed to establish the fraud. For if there be any unnecessary or unreasonable delay in making the application the right to make it will be considered as waived." *Worthington* v. *Gittings,* 56 Md. 549; *McCambridge* v. *Walraven,* 88 Md. 381.

We think from both principle and authorities that the release in the prior case and the orders based thereon upon which the entry of "agreed and settled" was made, under

the eye and with the sanction of the Court in that case, cannot from the facts and circumstances here disclosed, be annulled and set aside by the collateral proceeding thereafter instituted by the appellant against the appellee, and from the judgment in which case this appeal is taken.

The appellant is asking in a collateral proceeding instituted in a Court of Law, that a judgment previously entered in a prior case, by the same Court, in a suit brought to recover for the same injuries for the recovery of which this suit is instituted, be set aside and annulled. The plaintiff's remedy in this case was either by motion to strike out the judgment, filed in due season in the Court in which the judgment was entered, or by a direct proceeding instituted in a Court of Equity, within a reasonable time after the discovery of the facts which are supposed to establish the fraud, for the setting aside and annulment of the judgment. Instead, however, of pursuing the remedy suggested, the plaintiff waited, after the discovery by her of the alleged misrepresentation and fraud of which she complains, and after such had been made known to her counsel, for nearly a year when these proceedings were instituted.

We think the Court committed no error in granting the fourth prayer. Entertaining this view of the case, it is unnecessary for us to pass upon the other questions raised upon this appeal. We will, therefore, affirm the judgment of the Court, with costs to the appellee.

*Judgment affirmed, with costs to the appellee.*