393 P.2d 588

Ralph YRIBAR, Carlos Yribar, Cornelia Muniosguren, Milagros Etchepare, Segunda Yribar, Juan Muniosguren, Richard Uranga, and Damiana Muniosguren, Contestants of the Last Will and Testament of Felipe Yribar, Deceased, Plaintiffs-Appellants,

v.

H. B. FITZPATRICK and Oliver Davis, Proponents of the Last Will and Testament of Felipe Yribar, Deceased, Defendants-Respondents.

No. 9354.

Supreme Court of Idaho.

June 22, 1964.

**368**

McDevitt & McDevitt, Pocatello, for appellants.

Anderson & Beebe and H. William Furchner, Blackfoot, and Hartley P. Kester, Arco, for respondents.

Allan G. Shepard, Atty. Gen., Boise, amicus curiae.

McQUADE, Justice.

The opinion of this court filed herein March 19, 1964, is withdrawn and this opinion is substituted therefor.

The testator was a Basque immigrant who arrived in this country when he was approximately sixteen or seventeen years old. He began his career herding sheep and working as a laborer in various localities of the west. He came to Idaho in 1925 and married his now deceased wife, Pet Yribar, sometime around 1927. Shortly thereafter, Belle Hawkins came to live with the decedent and his wife. It appears that she was treated like a daughter. She lived with them until the death of Mrs. Yribar in 1949. The Yribars had no children, and the testator left no lineal descendants.

Although the testator had little or no formal education, he was a hard worker and was blessed with a great deal of business acumen. He became possessed of considerable land holdings in Custer County upon which he made valuable improvements.

About 1944 testator requested two of his nephews, Ralph and Carlos Yribar, to work for him. Sometime later, Milagros Etchepare, a sister of Ralph and Carlos, came to work for the testator. Neither Milagros nor Carlos remained at the ranch very long. It is not clear from the record how long Carlos remained at the ranch, but apparently Milagros left sometime prior to 1950. Ralph, however, worked seven years for his uncle. Ralph received no salary for his labor but was furnished board, room, clothing and expenses and given nine thousand

dollars at the end of his seven-year period of service. He left the ranch in 1951 because his wife and testator's housekeeper, Mrs. Glenn Goodin, were incompatible.

In 1957 testator caused H. William Furchner, his attorney, to revoke a will which he had executed in 1953. Testator executed a new will in 1957, the relevant portions of which are as follows:

### "THIRD.

"I direct that the sum of Ten Thousand Dollars, ($10,000.00), be set aside by my executors and held by them in trust for my friend and employee, Mrs. Glenna Goodin, * * *.

### "FOURTH.

"I give and bequeath to my nieces, Milagros Yribar and Segunda Yribar, both of whom are now married, the sum of Ten Thousand Dollars, ($10,-000.00), each.

### "FIFTH.

"I further direct that the sum of Ten Thousand Dollars ($10,000.00), be set aside by my executors and held by them in trust for each of my three nephews, Ralph Yribar, now residing at Pocatello, Idaho; Carlos Yribar, now residing in the State of Nevada; and *Conalio Muniusburu*, now residing at Twin Falls, Idaho, * * *.

### "SIXTH.

"I further direct that my executors set aside sums of Ten Thousand Dollars ($10,000.00), for each of the children of my nephew, Ralph Yribar, to be paid to them or their guardian for their education and maintenance * * *.

### "EIGHTH.

"After paying or setting aside funds for the above-mentioned bequests and for all debts, expenses of administration, taxes, and all other proper charges, I direct that my executors, together with my attorney, pay the remaining balance of the funds of my estate to some worthy, charitable or public institution or institutions to be selected by my executors and my attorney acting jointly and in agreement with each other, and I intend that their decisions upon the recipients of such funds shall be final and conclusive upon all persons.

### "NINTH.

"I hereby nominate and appoint my friends Oliver Davis of Challis, Idaho, and H. B. Fitzpatrick of Blackfoot, Idaho, as executors of this my last will and testament with all of the powers hereinabove mentioned, and I hereby authorize them to make distribution of the funds of my estate from time to

time as they may deem proper, with due regard to the condition of my estate and with a proper reserve for payment of all probable taxes and expenses, to the legatees in their proper proportions as above mentioned; and I request that they select as their attorney in the administration of my estate my attorney, H. William Furchner of Blackfoot, Idaho."

In February, 1962, after the testator became ill and was hospitalized at Challis, the above-mentioned Oliver Davis wrote to Furchner stating that the testator wanted to establish a trust for Ralph's children during his lifetime to secure certain inheritance tax advantages.

Testator left the hospital on February 15th but re-entered on the 19th. He was then sent to the hospital at Pocatello. Most of the members of his family were in attendance at this time. Furchner was called for, and he arrived at the hospital in the company of the above-mentioned H. B. Fitzpatrick. Testator told them of his desire to set up the trust for Ralph Yribar's children.

Furchner and Fitzpatrick returned to the hospital on February 27th, and a trust agreement not involved herein was executed. The codicil to the 1957 will was discussed at this time and was prepared by Furchner later in the day. Both Furchner and Fitzpatrick returned to the hospital and the testator signed the codicil. Testator died on March 1st. The pertinent provisions of the codicil are as follows:

### "FIRST

"I give and bequeath to my friend, Belle *Hogan*, the sum of $8,000.00.

### "SECOND

"I give and bequeath to the constituted authority in charge of the Challis, Idaho, cemetery the sum of $5,000.-00, for use in the improvement and development of said cemetery; provided, a memorial plaque suitable to my executors be placed therein bearing my name as donor of such improvement fund.

### "THIRD

"I give and bequeath the sum of $10,000.00 to the constituted authority in charge of the Mackay, Idaho, cemetery; provided, a memorial plaque suitable to my executors be placed therein bearing my name as donor of such improvement fund.

### "FOURTH

"I direct that my executors pay over the sum of $3,000.00 to the son-in-law of my friend, Glenn Goodin, whose name I believe to be Dick Dixon, for use only to provide an addition to his home for occupancy by said Glenn Goodin during the remainder of her lifetime.

"FIFTH

"In all other respects I hereby confirm and revive my said will."

The jury in the will contest found that there was no duress, fraud, menace, or undue influence. The probate court withdrew from the consideration of the jury the question of testamentary capacity of the testator and the question of due publication, execution and attestation of the will and codicil on the ground that appellants, herein referred to as contestants, had raised no issue with respect thereto. After the will contest proceedings, the probate court admitted the will and codicil to probate. In a supplemental order, the probate court denied contestants' motion to void certain portions of the will and codicil relating to the charitable bequests.

The contestants appealed from the judgment and orders of the probate court to the district court on questions of both law and fact. I.C. § 17–206 was thus invoked, which provides: " * * * If the appeal be upon questions of law and fact, the trial in the district court shall be de novo."

In the district court, respondents moved for a summary judgment under I.R.C.P. 56 (b), (c) and (e). The district judge, on the affidavit of H. B. Fitzpatrick and on the records, files and transcript of proceedings held in the probate court, granted the motion and entered judgment affirming the judgment and orders of the probate court. He found

that there was no genuine issue as to any material fact and that respondents were entitled to judgment as a matter of law. This appeal is from the summary judgment of the district court affirming the judgment and orders of the probate court.

Contestants assert that the district court lacked jurisdiction to enter a summary judgment under I.R.C.P. 56(b), (c) and (e). A motion for summary judgment is applicable on trial de novo when there is no genuine issue as to any material fact. See Compiler's Note, I.R.C.P. 81(a), and In re Killgore's Estate, 84 Idaho 226, 370 P.2d 512 (1962).

Contestants also contend that the district court committed error in granting respondents' motion for summary judgment. This assignment of error presents the question whether there is a genuine issue as to any material fact for determination on trial de novo in the district court. I.R.C.P. 56 (c).

The record presented to the district court in support of and in opposition to respondents' motion consisted of the files and pleadings, the affidavit of H. B. Fitzpatrick filed with the motion, and a transcript of the testimony and proceedings had in the probate court. The district judge stated in his Memorandum Decision that, "The preponderance of the evidence is conclusive that at the time of the execution of the said Will

and Codicil the testator, Felipe Yribar, was free from duress, menace, fraud or undue influence; also that at the time of the execution of said Will and Codicil that said decedent did possess testamentary capacity * * *." It is not, however, the function of the trial judge on a motion for summary judgment to weigh the evidence or determine the factual issues. In re Killgore's Estate, supra; Merrill v. Duffy Reed Const. Co., 82 Idaho 410, 353 P.2d 657 (1960).

Upon rehearing respondents urge that the district court correctly granted the motion for summary judgment as contestants failed to file a counter affidavit to that of H. B. Fitzpatrick as contemplated by I.R.C.P. 56 (e). This section requires the affiant to set forth such facts as would be admissible in evidence. It further provides that, " * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

■ However, the affidavit of H. B. Fitzpatrick does not comply with the requirements of I.R.C.P. 56(e). All that is contained therein is Fitzpatrick's statement that he attended the trial in the probate court and that contestants "did not adduce any material, competent or relevant testimony in support of the allegations of the amended complaint." This represents merely an attempt to evaluate the testimony given on the trial in the probate court. Affiant has not set forth facts that would be admissible in evidence but has stated his conclusions and opinions as to the significance of the evidence presented in the court below. This function is for the trier of fact in the district court and is not the purpose of the affidavit under I.R.C.P. 56(e).

■ In addition, it is obvious that contestants did not attempt to rest upon "mere allegations or denials" of their pleading. This was to be a trial de novo, and the district judge had before him not only the pleadings but also a complete transcript of the proceedings which were held in the probate court. As there was more than a complaint and an answer present here, I.R.C.P. 56(e) is not applicable.

As a trial must be had, we shall pass upon the applicable questions of law involved herein. I.C. § 1-205.

Under paragraph eight of the contested will, Furchner is clothed with duties and responsibilities similar to those of an executor. Under paragraph nine, the other two executors are requested to select Furchner as the estate's attorney. Furchner also served as an attesting witness to both the

contested will and the codicil. Contestants insist that the benefits that Furchner will receive under both the will and the codicil render him incompetent as an attesting witness. 94 C.J.S. Wills § 185 at p. 998 states that:

"Interest of itself, without regard to its nature or bearing on the issue, has never operated to exclude a witness from giving evidence; and the true test of interest is whether the witness will gain or lose financially as the direct result of the proceeding, * * *. It has very generally been held that the interest which will disqualify an attesting witness must be a present, direct, certain, and vested interest and not one which is remote, indirect, uncertain or contingent; * * *."

The interest conferred upon Furchner by the will and codicil is not so direct and remunerative as to render him incompetent as an attesting witness. If any fees are to be paid him, such will presumably be for services rendered to the estate. This is compensation and such an interest would not render Furchner incompetent to attest the will and codicil. 1 Page on Wills secs. 321, 325, 327 (1941); In re La Mont's Estate, 39 Cal.2d 566, 248 P.2d 1 (1952); Drosos v. Drosos, 251 Iowa 777, 103 N.W.2d 167 (1960); Rosenbaum v. Cahn, 234 Ark. 290, 351 S.W.2d 857 (1961); In re Henderson's Will, 272 Wis. 163, 74 N.W.2d 739 (1956);

In re Haupt's Estate, 200 Cal. 147, 252 P. 597 (1926).

Another issue presented by this appeal concerns questions of interpretation which may arise if the order admitting the will and codicil to probate is affirmed by the district court.

During the trial of this case in the probate court, contestants raised questions of construction of the terms of the will. At a very early stage in the trial, contestants made the following motions:

"Come now the contestants, * * * and move the court, first, that the purported will on file herein be stricken as being contrary to law, indefinite, and uncertain, and so obscure in its provisions as to be unable of execution or fulfillment.

"Second, that the residuary clause in the purported will is so indefinite, uncertain, and impossible of ascertaining the beneficiary thereof, and in addition gives the executors powers that are reserved by law to the testator himself.

* * * * * *

"That the evidence shows the charitable bequests in the will to be void.

"That the evidence shows that the codicil, or the alleged codicil was executed within thirty days of the death of Felipe Yribar. That this invalidates both the charitable bequests in the cod-

icil, and also invalidates the residuary clause in the will, because the same affects the residuary clause in the will, and constitutes a re-publication of the will. And that such re-publication and such alteration of the residuary clause of the will occurred within thirty days of the death of Felipe Yribar, the alleged testator." Probate Court Trans. vol. 1, pp. 120–121.

These motions were made a second time by the contestants upon the conclusion of the trial. Probate Court Trans. vol. 2, pp. 244–246. The court denied certain of the motions; however, it withheld ruling upon the others for the reason that it wished to wait upon the ruling of the jury on admissibility of the will and codicil to probate. Probate Court Trans. vol. 2, p. 252. Subsequent to entry of judgment admitting the will to probate, the probate court denied the motion seeking to void the residuary clause and the charitable bequests.

Contestants took their appeal to the district court upon questions of both law and fact and upon the whole of the judgment and findings, conclusions, orders and judgment on the jury verdict of the probate court. The district court decided the questions of fact and admitted the will to probate but declined to decide the questions of law.

Respondents argue that the district court proceeded correctly in this matter. To summarize their position, respondents contend that the probate court lacked jurisdiction to attempt construction at this stage of the probate proceeding; they conclude that the district court also lacked jurisdiction to attempt construction because the jurisdiction of the district court on appeal from the probate court is purely derivative. Davis v. Parkin, 75 Idaho 266, 270 P.2d 1007 (1954).

■ Respondents insist that the probate court could not acquire jurisdiction to construe the terms of the will until after the contest proceeding. Recently we pointed out in In re Eggan's Estate, 86 Idaho 328, 386 P.2d 563 (1963), that generally in a will contest proceeding, the issues first to be presented to the court for decision relate only to due execution of the will, competency of the testator and freedom from duress, menace, fraud or undue influence and in the first instance may not relate to a construction of the terms of the will.

■ Respondents further contend, however, that matters of construction can only be raised in independent proceedings. They argue that unless new proceedings are instituted, the issues will be complicated and parties not before the court will have their substantive rights litigated. In the instant case it is not contended that all necessary parties were not before the court. Upon bate court in the same proceeding ruled up- the termination of the will contest, the pro-

on the questions relating to the provisions of the will and codicil and this procedure was proper.

This case is reversed and remanded to the district court for trial de novo. If it is concluded by the district court that the instruments were properly admitted to probate and a construction of their terms is sought by either contestants or respondents, the district court will proceed to decide questions of law relating thereto.

Costs to appellants.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.