670 P.2d 884

**Dorothy BODINE, Plaintiff-Appellant,**

v.

**Loren BODINE, Defendant-Respondent.**

**No. 14625.**

Supreme Court of Idaho.

Oct. 3, 1983.

E. Don Copple of Davison, Copple, Copple & Copple, Boise, for plaintiff-appellant.

Stanley W. Welsh of Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

The parties were separated in 1975 and at the time of the divorce in March of 1976, they entered into a property settlement agreement. Following the divorce, the wife, Dorothy Bodine, brought this suit as an independent action. She contends that in the course of their negotiations her husband, Loren Bodine, misrepresented the value of their property.

The trial court granted summary judgment in favor of the husband. In the district court's written opinion and order granting the summary judgment, the court stated that while there was no genuine issue as to the identity and disclosure of the property owned by the parties at the time of the negotiations, an issue did exist as to whether the property values given by the husband were fair and accurate. While discussing the possibility of fraud the trial judge found that "a claim by the wife under circumstances existing in the instant case that the property values provided by

the husband were not accurate does not justify setting aside the property-settlement agreement.... I conclude, therefore, that on the present record there is no genuine issue as to any material fact and the Defendant is entitled to Summary Judgment." The plaintiff-wife appealed this decision.

The Court of Appeals reversed the trial judge's decision and remanded the case in light of the recent Idaho Supreme Court case of *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980), which was released two months after the district court granted summary judgment in favor of the husband-defendant. The Court of Appeals held that the district court was too restrictive when it concluded that relief from a property settlement agreement must be denied by summary judgment when parties occupy adversary positions and are represented by legal counsel. The Court of Appeals then directed the trial court to consider other factors that were addressed in *Compton* in order to determine whether summary judgment should be granted.

The parties in this action have treated the property settlement agreement as though it were merged into the divorce decree. Therefore, in order for the wife to attack the judgment, since the time limitations have run for other avenues of review, she must show an extreme degree of fraud. *Compton, supra.* As stated in *Compton,* "[t]here is no expressed time limit ... with respect to the independent action to relieve a party from judgment." 101 Idaho at 334, 612 P.2d at 1181. This Court in *Compton* also stated, however, that an independent action "will lie only in the presence of an extreme degree of fraud," 101 Idaho at 335, 612 P.2d at 1182, and that "to survive husband's motion for summary judgment the burden rests with wife, as challenging party in this case, to allege such fraud as to support an independent action for relief from judgment." 101 Idaho at 336, 612 P.2d at 1183.

■ On a motion for summary judgment the trial court and an appellate court must construe all facts and inferences most fa-vorably toward the party opposing the motion. If a genuine issue of material fact remains unsolved, summary judgment is improper. *Taylor v. Choules,* 102 Idaho 222, 628 P.2d 1056 (1981). Neither the district nor an appellate court can weigh the facts to determine the issues.

■ As stated, the trial judge found that "a claim ... that the property values provided by the husband were not accurate does not justify setting aside the property-settlement agreement." However, an examination of the evidence in a light most favorable towards the wife shows that she did more than claim that the value the husband attached to the property was inaccurate. Rather, she stated in an affidavit that she discovered the fair market value of the property at the time the agreement was entered into was $1,650,000.00 and that her husband, Mr. Bodine, had represented to her attorney that the community property was valued at $446,000.00 and that the representation of $446,000.00 "was totally false and made by the Defendant with the intent to deceive and defraud me." Also, at the time of the divorce she allegedly was under the care of a psychiatrist and, with her husband's knowledge, she was taking medication prescribed by her psychiatrist to sedate her. This evidence is all relevant to the fraud issue.

The Court of Appeals reversed and remanded for the trial court to reconsider the motion for summary judgment in light of *Compton.* However, an examination of this evidence in a light most favorable to the wife indicates that as a matter of law a genuine issue of material fact does exist, thus precluding the granting of a summary judgment motion. Therefore, we reverse the trial court's decision and remand for a trial on the issue.

Costs to appellant Dorothy Bodine.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Justice, dissenting.

The district judge in the instant case on March 29, 1980 was somewhat omniscient in

anticipating this Court's opinion in *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980). There, as here, a divorce decree was entered, and two and a half years later the former wife filed an action seeking to set aside the decree and property settlement agreement on the grounds they had been procured by misrepresentation and fraud on the part of the husband. Following discovery, the court granted the former husband's motion for summary judgment. The former wife appealed and this Court affirmed. In *Compton,* as in the instant case, the former wife stated that "during the marriage she had little or nothing to do with decisions regarding investment or management of the community and that in forming the property settlement agreement she relied entirely upon the representations of husband." *Id.,* 101 Idaho at 332, 612 P.2d at 1179.

In *Compton,* prior to the formation of the property settlement agreement, there were numerous occasions when husband and wife discussed the property issues.

The Court in *Compton* held: "It is, of course, the general rule that once a judgment issues it is *res judicata* with respect to all issues which were or could have been litigated." *Id.,* 101 Idaho at 328, 612 P.2d at 1180. The Court then went on to discuss various means of attacking a judgment which is otherwise *res judicata* and settled upon the issue of fraud as one of the means of obtaining modification of the judgment. The Court in *Compton* then stated:

> "The term 'fraud upon the court' contemplates more than interparty misconduct, and, in Idaho, has been held to require more than perjury or misrepresentation by a party or witness, even where the misrepresentation was made to establish the court's jurisdiction. [Citation.] Apparently such fraud will be found only in the presence of such 'tampering with the administration of justice' as to suggest 'a wrong against the institutions set up to protect and safeguard the public.' [Citations.]" *Compton, supra,* 101 Idaho at 334, 612 P.2d at 1181.

The Court in *Compton* then went on to discuss the distinction, if any, between extrinsic and intrinsic fraud and the fiduciary duty existing between husband and wife, and stated:

> "This fiduciary duty extends to the parties' negotiations leading to the formation of the property settlement agreement during marriage, and requires, at least, a disclosure by both parties of all information within their knowledge regarding the *existence of community property and of pertinent facts necessary to arrive at a reasonable valuation of the property.* Like a business partner, *each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation,* its inclusion in the community, or other such issues. They are not free, however, to resolve such issues unilaterally by concealing the very existence of particular items or amounts of property." *Id.,* 101 Idaho at 336, 612 P.2d at 1183.

In *Compton,* the argument was made that the husband had both concealed the existence of property and misrepresented the value of certain property. The Court held that the husband had disclosed the existence of property and that the wife was responsible for a determination of the value, stating:

> "She was thus on notice and free to challenge husband's valuation by coming forward with her own experts, or otherwise attempting to convince the trier of fact that husband's valuation was incorrect. Her inadvertence or misjudgment in failing to do so when the opportunity was ripe is an excellent example of the type of conduct which the independent action to relieve a party from judgment will not lie to correct." *Id.,* 101 Idaho at 337, 612 P.2d at 1184.

In contrast with *Compton,* the following proceedings and facts are revealed in the instant case. Husband and wife separated in May of 1975, and according to the deposition of the wife, no communications took place between the parties between May of

1975 and the time of the divorce decree in March of 1976, *i.e.*:

"Q. Did you talk to Mr. Bodine regularly after May of '75?

"A. No.

"Q. How often did you talk to him after May of '75 until March of '76?

"A. I don't think I did.

\*   \*   \*   \*   \*   \*

"Q. Did he say anything to you about the property after May of '75?

"A. No.

"Q. Did you go through your attorney then?

"A. Yes.

"Q. All communications that were communicated were from you to your attorney and through the attorney to your husband?

"A. Yes."

In May of 1975, plaintiff-wife filed a complaint for a divorce, praying for an equitable division of the property. On September 3, 1975, plaintiff's counsel took the deposition of the defendant-husband. In that deposition, counsel for the plaintiff thoroughly explored the income of the husband, checking and savings accounts, securities, insurance policies, and ownership in partnerships and corporations. Plaintiff's counsel was furnished income tax returns for the previous five years. Sitting in on the deposition and answering some of the questions was an accountant who maintained the books of the partnerships and corporations. Among other items explored were the financial institutions in which each of the entities had done business. Undistributed income and retained earnings were explored.

Aside from properties allocated to the wife, the majority of the community property (approximately $334,000) lay in T & C Development ($59,000), H & B Realty ($44,000), H & B Farms (16,000), and T & C Investment ($213,000). At the September 1975 deposition of defendant, each of those properties was thoroughly explored as to their location, acquisition cost, indebtedness and equity therein. As to the T & C Invest-

ments, which constituted the great majority of the property, the defendant was queried as to the payment for the buildings, land and other assets being $397,017.07. The colloquy as to value was as follows:

"Q. BY MR. REDFORD: You have listed present value of $625,000. Who made that estimate?

"A. Mr. Creswell [the accountant].

"Q. Is that estimate to the best of your knowledge, based on potential resale?

"A. That estimate is based upon a 1 per cent earnings.

MR. CRESWELL: We capitalized the operating income at 1 per cent a month, which is fairly typical for commercial income property, and that figure comes to $600,000.

"Q. BY MR. REDFORD: Possibly you have listed on here, and I can't find it, do you recall what your present equity in that property is?

MR. CRESWELL: First the hundred thousand dollar retained earnings plus the $30,000 original capitalization would be the equity in the entire corporation. That would be the difference in the assets and liabilities. And 90 or 95 per cent of that is the real estate itself, so that is approximately the equity at book value. This equity at market value would be something else.

"Q. BY MR. REDFORD: Have you made any determination as to what the market value of the property is?

"A. Yes. That is what he was telling you a minute ago, $625,000. And that is based upon your 1 per cent per month." (Material in brackets supplied.)

Counsel for both parties initiated an attempt to arrive at a settlement of the property distribution issue. Counsel for husband wrote to counsel for wife:

"Pursuant to our last conversation concerning the Bodine case, I asked Mr. Bodine and his accountant to make a complete recapitulation of the *asset picture* and to formulate *an offer*.

"They have done so, and I am enclosing a copy of that effort.

\* \* \* \* \* \*

"On the summary on the front page, he has jotted down items he thinks she might want in her ½. He is not limiting her to those items, nor suggesting that she even take them, but would rather predicate his offer on this: *That she take her choice of the assets listed at the prices given* and any deficiency between the total of such items selected by her and the ½ value cited above would be paid by him at $1,000 per month, including interest." (Emphasis supplied.)

At a later time, counsel for the husband wrote counsel for the wife:

"Rather than attempt to explain Mr. Bodine's response to your recent inquiry I felt a letter with supporting documentation might be more satisfactory and am accordingly enclosing some sheets which I think will *support what is essentially an acceptance of your proposal* at least in so far as the philosophy thereof is concerned. The first two items of the first page of the enclosed recapitulation under the items marked 'Business Equities' and 'Personal Equities' comprise the same list of assets that *you have used in arriving at an over-all valuation of the community assets of the parties but with one difference. You have a total of $483,420.00* which total has been diminished to $475,420.00 . . ." (Emphasis supplied.)

On the 9th day of March 1976, plaintiff appeared before the court and introduced evidence. The defendant was not before the court and produced no evidence. The property settlement agreement entered into by the parties on the advice of their respective counsel was by the plaintiff tendered to the court and testified to as being fair and equitable. The court made a specific finding that the agreement was fair and equitable and ratified, confirmed and approved it.

That agreement awarded the wife separate property of stocks, bonds and bank deposits, and awarded her the dwelling house, a rental property, household furnishings, automobiles and promissory notes. The husband was required to additionally pay the wife approximately $131,000, together with eight per cent interest thereon over a period of years.

In 1979, plaintiff commenced the instant action, seeking to set aside the decree of divorce by which the property of the parties was divided. Essentially, the theory of the plaintiff is that the consent given by the wife to the property settlement agreement, which the wife tendered to the court as being a just and equitable division of the property, was procured by fraud and misrepresentation as to the value of certain of the properties. Upon motion for summary judgment, the district judge held that there was no genuine controversy, but that prior to the divorce the wife's then attorney took the defendant's deposition and submitted interrogatories, in both of which the question of identity and value of property owned by the parties was pursued and that the two attorneys exchanged correspondence dealing with the valuation of the property. There is no question but that all property owned by the parties was disclosed by the defendant prior to the property settlement agreement, and plaintiff makes no claim to the contrary.

The trial court held that, under the circumstances, a claim by the wife that the property values provided by the husband were not accurate does not justify setting aside the property settlement agreement, thus anticipating our decision in *Compton*, and further held that the allegations in plaintiff's complaint and her affidavits were not material. Summary judgment was therefore granted.

Even assuming that the learned district judge was in error in so ruling on the law (which I do not believe), nevertheless, summary judgment was still proper in the instant matter.

Summary judgment is, of course, improper if there remain for resolution disputed issues of material fact. At the summary judgment juncture, the accepted rule is that all disputed facts and any legitimate infer-

ences arising therefrom are construed most favorably toward the party resisting summary judgment. It is also a tenet of summary judgment proceedings, however, that a litigant must tender detailed evidence squarely raising legitimate issues of material fact and cannot rest upon mere allegations and pleadings, remote possibilities, or statements that such evidence will be tendered at trial. Viewing the entire record in this matter, I would hold that the plaintiff has not made out a case substantiating the existence of controverted material facts.

It is established in *Compton v. Compton, supra,* that the only method by which the cause can be reopened and the *res judicata* effect of the judgment destroyed is an allegation of fraud and proof thereof by clear and convincing evidence. Plaintiff's non-verified complaint does contain an allegation of fraud, *i.e.,* that defendant, at the time of the divorce, misrepresented the value of the community property. This Court has clearly and consistently held that a party alleging a cause of action based on fraudulent misrepresentation must prove the following nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) *his right to rely thereon;* and (9) his consequent and proximate injury. *Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980); *Smith v. King,* 100 Idaho 331, 597 P.2d 217 (1979); *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978).

To fit the facts of the instant case into the above established law regarding the elements necessary for proof of fraud by misrepresentation, I offer the following. It is admitted that no representation was made by the defendant to the plaintiff. The representation, if so it be deemed, was made by defendant's counsel in response to and basically in acceptance of settlement tendered by plaintiff's counsel. The only statements of value were made by the defendant in the course of a deposition taken from him on information furnished him by his accountant and with an explanation of how the value was established. Assuming that plaintiff trusted her then husband and also assuming that she could not think clearly because of the influence of drugs, nevertheless, I believe that statements made to an attorney during the course of deposition testimony, or statements made in response to offers of settlement exchange between attorneys, do not constitute compliance with factor number five, *i.e.,* do not demonstrate an intent that such statements should be acted upon by the person (plaintiff). I believe there is no compliance with factor number six, that the hearer, *i.e.,* plaintiff's counsel, be ignorant of the falsity of the statement, if indeed it was false. I believe there is no showing of compliance with factors seven and eight, *i.e.,* that the plaintiff's counsel rightfully rely upon such statement, and indeed I cannot believe that an attorney representing a litigant has the right to rely on statements of opposing party or opposing counsel on the question of such an abstract and tenuous concept as value.

Finally, I would note that the question presented is whether the statements of defendant or his counsel regarding the value of the community property prior to the time of the execution of the agreement were fraudulent and false. What were the values of the property prior to the execution of the agreement? Even putting aside all of the missing but required elements of fraud, what does plaintiff offer by way of an indication of value of the property in 1975 which is different than that contained in the agreement?

The deposition of the plaintiff was taken October 25, 1979. The substance of plaintiff's testimony is that she personally has no idea of the value of the property, but that rather some of her neighbors, friends and family suggested to her that she did not come out of her divorce with sufficient money. She indicated that the properties had not been appraised as of the date of the agreement or divorce, or at any time. She was given the following line of questioning:

"Q. Now, you say that in November of '78 you discovered the fair market value of the real property from the divorce was, in truth, in excess of $1,650,000.00. Of that $1,650,-000.00, what was the value of Hedrick & Bodine Realty as of the date of the divorce?

"A. I don't know.

"Q. You have no idea.

"A. No, not as of the date of the divorce.

"Q. What was the value of Hedrick & Bodine Farms as of the date of the divorce?

"A. I haven't the slightest idea.

"Q. What was the value of town & country investments?

"A. It was never discussed. I wouldn't have any way of knowing.

\*　\*　\*　\*　\*　\*

"Q. You say that he was trying to deceive and defraud in 1976 when he said the property was worth $446,-000.

"A. Yes.

"Q. Okay. What facts do you have to support that? What makes you think that he knew the property was worth any more than that?

\*　\*　\*　\*　\*　\*

"Q. So you, then, believe that because he was in the business, that he should have know it was worth more.

"A. I would think that, yes.

"Q. Well, as of this date, you don't know what it was worth on that date, do you?

"A. In '76, no.

"Q. You don't know if it was worth more than $446,000, do you?

"A. I do not.

"Q. So as far as you know at this date right now, it could have been the correct value?

"A. You mean it could have been? You mean did I think—I'm confused.

I'm not used to this. Say that again.

"Q. What I'm saying is, you don't know that it was worth any more than that in 1976, do you?

"A. I do not.

"Q. So you don't know that he deceived you in '76 right now, do you?

"A. No."

In sum, I suggest that the summary judgment was properly entered, even assuming that the district judge erred in the legal theory upon which he based his decision. The Court commits major error in permitting the finality of the judgment to be destroyed under circumstances such as are presented here and overruling *Compton* without specifically so stating in its majority.

I would affirm the decision of the district court.

BAKES, Justice, dissenting:

The case of *Compton v. Compton,* 101 Idaho 328, 612 P.2d 1175 (1980), cited by the majority, presented facts strikingly similar to the facts presented in the present case. In *Compton,* an ex-wife also alleged fraud on the part of her ex-husband. We used that case to set out the rules for independent actions to set aside property settlements because of fraud.

First, we said:

"[T]he independent action in equity is a most unusual remedy, available only rarely and under the most exceptional circumstances. It is most certainly not its function to relitigate issues determined in another action between the same parties, or to remedy an inadvertence or oversight of one of the parties to the original action. It will lie only in the presence of *an extreme degree of fraud.*" 101 Idaho at 335, 612 P.2d 1175 (emphasis added).

Later, we noted:

"Like a business partner, each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation, its inclusion in the community,

or other such issues." 101 Idaho at 336, 612 P.2d 1175.

In *Compton,* we indicated that overreaching must be alleged, then noted:

"No such overreaching has been proven or even alleged in this case: wife's most serious charge is that husband misrepresented the state of the community.... [T]o survive husband's motion for summary judgment the burden rests with wife, as challenging party in this case, to allege such fraud as to support an independent action for relief from judgment." 101 Idaho at 336, 612 P.2d 1175.

Thus, the burden rested with the wife in the present case to allege "an extreme degree of fraud." The wife did submit affidavits to the court containing allegations, but those affidavits did not comply with I.R.C.P. 56(e). That rule states:

"RULE 56(e). FORM OF AFFIDAVITS—FURTHER TESTIMONY—DEFENSE REQUIRED.—Supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth *such facts* as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphasis added).

The majority relies upon two particular statements in affirming the Court of Appeals. One statement read: "Based upon my husband's Answers to Interrogatories and the representation made by my husband that the community property had a fair market value of $446,000, counsel instructed me to enter into a Property Settlement Agreement with the Defendant.... In November, 1978, I discovered that the fair market value of the real property was in truth and in fact, $1,650,000. On February 27, 1976, the Defendant represented to my attorney that our community property was valued at $446,000." [1] This statement does not allege facts indicating what property was undervalued, how the wife came to the conclusion that it was undervalued, whether the new valuation rested on facts

within her personal knowledge, etc. Rule 56(e) specifically states that an affidavit must be based on personal knowledge and must show that the witness is competent to testify to the facts asserted. Since there are no underlying facts asserted, no indications of personal knowledge, and no showing of competency to testify as to valuation of the property, the above statement would not be admissible in evidence, and thus cannot be relied on in defending against a motion for summary judgment. *Roper v. Elkhorn At Sun Valley,* 100 Idaho 790, 605 P.2d 968 (1980) (affidavit failing to assert specific facts as basis for alleged right will not preclude grant of summary judgment to defendant); *Matthews v. New York Life Ins. Co.,* 92 Idaho 372, 443 P.2d 456 (1968) (conclusions, hearsay, lack of showing of personal knowledge, all render affidavit insufficient to support motion for summary judgment).

The most that can be said about the foregoing allegations concerning value is that the husband's attorney conveyed to the wife's attorney their valuation of the property to be $446,000 and in November, 1978, the wife "discovered" (without indicating upon what basis that discovery was made) that the fair market value of the real property was "in truth and in fact $1,650,000." Those allegations would appear to fit within the foregoing statement from the *Compton* case that "like a business partner, each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation ...." 101 Idaho at 336, 612 P.2d 1175.

The other statement in the plaintiff's affidavit, relied upon by the majority, is that Mr. Bodine's representations "were totally false and made by the defendant with the intent to deceive and defraud me." This statement is a bald conclusion, on its face inadmissible, and fails to comply with Rule 56(e). The affidavit fails to allege facts in support of this statement, or indicate that the affiant had personal knowledge of the

1. The "representations" referred to by the wife were apparently representations made in correspondence between the spouses' attorneys.

The record reflects that the parties themselves conducted no direct communication during the divorce proceedings.

defendant's intent. As we noted in *Tri-State National Bank v. Western Gateway Storage Co.,* 92 Idaho 543, 447 P.2d 409 (1968), "Mere denials, assertions of what 'might have [been],' of what one has 'been told' or 'advised,' of matters not stated from personal knowledge, of numerous legal conclusions (especially by laymen), and of what one hopes 'will be shown at trial'" is not enough to prevent a grant of summary judgment to the other party. *See Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 510 P.2d 1091 (1973); *Openshaw v. Allstate Ins. Co.,* 94 Idaho 192, 484 P.2d 1032 (1971); *Yribar v. Fitzpatrick,* 87 Idaho 366, 393 P.2d 588 (1964).[2] Thus, the affidavits submitted by the wife were not sufficient under Rule 56(e) to withstand a motion for summary judgment. The trial court was thus correct in granting the motion, and should be affirmed.

BISTLINE, Justice, specially concurring.

*Compton v. Compton,* 101 Idaho 328, 334, 612 P.2d 1175, 1181, (1980), as the Court's opinion points out, held that "There is no expressed time limit, however, with respect to the independent action to relieve a party from judgment." This holding cleared up the massive ambiguity of I.R.C.P. 60 which in a single sentence encompassed independent actions and at the same time motions to vacate judgments for lack of personal service, and proceedings to set aside judgments for fraud upon the court. A casual reader unacquainted with the provisions of former code provision I.C. § 5–905, and Idaho case law, might well conclude from I.R.C.P. 60(b) that the one year limitation applies to independent actions and motions to set aside judgments for fraud upon the court. It does not, and it should be rewritten to cover in independent sentences the three categories which Justice McFadden carefully enumerated beginning with the last sentence on p. 333 of 101 Idaho, and on p. 1180 of 612 P.2d. In *Keane v. Allen,* 69

Idaho 53, 202 P.2d 411 (1949), the Court held that "A motion to vacate a judgment upon the ground of extrinsic fraud is in the nature of a legal remedy, but equitable in character, and is a further proceeding in the original action." *Id.* at 60, 202 P.2d at 415. Looking to Sec. 5–905, I.C.A. (later I.C. § 5–905 and later repealed) and in particular the one year provisions where summons was not personally served, the *Keane* Court also held:

"As hereinbefore pointed out, Sec. 5–905 is not controlling or exclusive where fraud is involved. Since one year is the maximum statutory time for vacation of a judgment, *a reasonable maximum time* for vacation of any judgment, the invalidity of which does not appear from the face of the judgment-roll, *should not be in excess of one year* from the entry of judgment. See Bancroft, Code Practice & Remedies, Vol. 3, p. 2460.

"Regardless of the maximum time, the motion must be nevertheless made within a reasonable time after discovery of the fraud. *Clark v. Southern Can Co.,* 116 Md. 85, 81 A. 271, 36 L.R.A., N.S., 980.

" 'Reasonable time' has been defined by Black's Law Dictionary, 3rd Ed., p. 1730, (citing many cases) as such length of time as may fairly, properly, and reasonably be allowed or required, having regard to the nature of the act or duty, or of the subject matter, and to the attending circumstances."

69 Idaho at 63, 202 P.2d at 417 (emphasis added).

It is to be noted that in *Keane v. Allen* the application for relief for extrinsic fraud was made within one year.

Ten years later the court had before it a case where more than one year had elapsed from the time of entry of the judgments there involved and the applications for relief therefrom. On the basis of the one-year maximum limitation of *Keane v. Allen,*

---

**2.** The fact that plaintiff was seeing a psychiatrist and was taking medicine is irrelevant. The extreme degree of fraud which the plaintiff must show must be based on the defendant's conduct, not upon her own weaknesses. All plaintiff has shown is a different opinion as to value, together with an incompetent, unsupported allegation that her husband intended to deceive and defraud her.

the district court denied relief. *Gregory v. Hancock,* 81 Idaho 221, 226, 340 P.2d 108, 111 (1950). An appeal followed.

This Court disavowed the statement in *Keane* setting a maximum time limitation of one year, *id.* at 228, 340 P.2d 108, and held, *almost* as pointed out in *Compton,* that:

> "Where extrinsic fraud has been perpetrated in obtaining a judgment the defendant is not confined to his statutory remedy to set the judgment aside by reason of his mistake, inadvertence, or excusable neglect. The equity power of the district court to vacate a judgment obtained by means of extrinsic fraud is inherent, not statutory, and is not subject to the time limitations imposed by the statute, I.C. § 5–905, and may be exercised after the lapse of the statutory time, in the discretion of the court.... *Such an attack* upon a voidable judgment *is direct, and may be made either by motion or independent action. In re Estrem's Estate,* 16 Cal.2d 563, 107 P.2d 36.
> . "Any motion to set aside a judgment on the ground of extrinsic fraud must be made within a reasonable time."

81 Idaho at 227, 340 P.2d at 111 (emphasis added).

*Gregory* was not, as the *Compton* opinion intimates, an independent action, but rather motions or petitions filed in the original action. The distinction, however, is clearly of no moment. Whether by motion, as in *Gregory,* or by independent action, as in *Compton,* where the grounds of relief are laid on allegations of extrinsic fraud, or upon fraud upon the court, or a combination of both, there is *no* time limitation other than a reasonable time—which in turn hinges on considerations of due regard for the nature of the act or duty, the subject matter, and attending circumstances. 81 Idaho at 227, 340 P.2d at 112.

Regarding *Compton's* discussion of fraud upon the court, beginning at p. 334 of 101 Idaho, 612 P.2d 1175, it is my understanding that fraud upon the court generally is *extrinsic* fraud, that is, where the court or court system is used as an instrumentality of fraud, which almost has to be unwittingly—for which reason it is extrinsic. My recollection of the clerk's file in *Gregory v. Hancock* is that the fraud alleged was exactly that type—extrinsic fraud practiced on one party the perpetration of which also made the court an instrument of fraud. *See Southern Idaho Production Credit Association v. Ruiz,* 105 Idaho 140, 666 P.2d 1151 (1983) (Bistline, J., specially concurring). As to our remarks on p. 335 of 101 Idaho under headnote 11, 612 P.2d 1175, fraud in the obtaining of judgment is per se rare and exceptional, for which reason it rises to the level of *extreme* fraud. Fraud has no place in the judicial proceedings, and, *a fortiori,* is extreme fraud when utilized to subvert or interfere with the integrity of a court. Such issues are hardly ever appropriate for summary proceedings. The matter at stake is not just the dispute between the parties, but the vindication of the judicial system. One party may not have the necessary evidence at hand to refute the other's affidavit—but, nevertheless at trial the court is at liberty to believe or not believe. It should also be kept in mind that, contrary to the views of one of the dissents, attorneys often do rely on the statements of other attorneys in matters of properly ascertained values, and in turn advise their own clients. Most attorneys will prefer to believe that the time has not yet arrived when exchanges of information between attorneys must be subscribed and sworn to. Here, in my view, it was neither unusual nor improper for one attorney to pass on to his adversary information which was believed to be reliable and honest. Behind it all, and under challenge here, is the veracity of the underlying informant, a client whose attorney obviously believed in him.