504 P.2d 386

Merril J. SHARP and Winnie H. Sharp, husband and wife, Plaintiffs-Respondents,

v.

IDAHO INVESTMENT CORPORATION, an Idaho Corporation, et al., Defendants-Appellants.

No. 10844.

Supreme Court of Idaho.

Dec. 4, 1972.

Coughlan, Imhoff, Christensen & Lynch, Boise, for defendants-appellants.

Whittier & McDougall, Pocatello, for plaintiffs-respondents.

McFADDEN, Justice.

In this action the plaintiffs-respondents, Merrill J. Sharp and his wife, Winnie H. Sharp, seek damages of $2,060 and reasonable attorney fees from the Idaho Investment Corporation and its officers (appellants). The complaint alleges that the appellants induced respondent Merrill J. Sharp to enter into an agreement to purchase 1250 shares of capital stock of appellant corporation at $2.00 per share, and that the methods employed by the appellant corporation and its officers were fraudulent, and "contrary to and in violation of the laws and statutes of the State of Idaho and of the United States of America." It is alleged that at the time of contracting to purchase the stock on October 18, 1965, the respondents paid $1,000 as a down payment. It is further alleged that the respondents made additional payments of $1,060, totalling $2,060, for which they seek damages.

The appellants answered the complaint setting out some ten separate defenses. In brief, the answer put in issue all allegations of fraud or wrongdoing in the complaint and numerous affirmative defenses.

The district court tried the case without a jury on the issues as framed by the pleadings. Findings of fact, conclusions of law and judgment awarding the sum of $2,060 damages and $3,500 for attorneys fees were entered in favor of the respondents. The judgment was entered not only against appellant corporation and against each of the individual defendants as offi-

cers and agents of the corporation, but also against the defendants individually.

Following entry of the judgment appellants timely filed objections to the findings of fact and conclusions of law, but the court overruled all the objections. The appellants then appealed from the judgment and from the order overruling appellants' objections to the findings of fact and conclusions of law.

The appellants by their nineteen assignments of error have challenged all but three of the thirty-one findings of fact and have challenged five of the nine conclusions of law. Other assignments of error dispute the admission in evidence of certain oral testimony and documents. An acceptable limit on the length of this opinion precludes an individual discussion of each of the assignments of error. Logically the issues presented by this appeal break down into three areas, i. e. the applicability of Ch. 18 of Title 26, Idaho Code (Blue Sky Law, first enacted 1913, S.L.1913, Ch. 117); the applicability of the Federal Securities Act of 1933 (15 U.S.C.A. 77a et seq.); and the applicability of common law principles of fraud.

### BLUE SKY LAW

The first issue for consideration is whether appellants failed to comply with the Idaho Blue Sky Law.[1] The district court's findings of fact pertaining to this issue may be summarized as follows.

Incorporated in 1961 under the laws of Idaho, Idaho Investment Corporation applied in 1963 to the commissioner of finance of this state for a permit to sell stock. A permit expiring July 1, 1965, was issued for two years. In 1963 a public offering prospectus was published offering stock of $1.00 per share. In January 1965 a second issue was offered at $2.00 per share. After the first permit expired no other permit was sought. Lee V. Neilson was an agent of the corporation authorized to sell stock; he was furnished certain printed material compiled by the officers of the corporation. On October 1, 1965, Neilson contacted Dr. Sharp for the purpose of selling stock to him. On October 18, 1965, Neilson, as a salesman of the corporation, sold the respondents 1,250 shares of the corporation's stock. The respondents paid $2,060 to the appellants. The commissioner of finance issued a permit to Neilson to sell stock on October 12, 1965. According to the district court, Neilson used unlawful sales and demonstration practices by employing a "pitch kit" which was not an approved document authorized by the Idaho Commissioner of Finance.

The district court also found that the sale of securities to Dr. Sharp was made at a time when the corporation's right to do business and its permit had been forfeited. Further, the corporation was not properly registered to sell stock. Since its permit had expired, since no new application had been made, and since no additional fees had been paid, its right to do business had been forfeited under I.C. § 26–1809.

The appellants have challenged the factual basis for many of these findings. The appellants assert that the evidence fails to support the findings and that a number of them are irrelevant to the issues presented by the pleadings.

The district court in its second conclusion of law stated:

"The Court concludes that the combination of Defendants' misrepresentations, reckless predictions of future earnings, omissions to state material facts as to the true financial status of the parent corporation and its subsidiary corporations necessary to the exercise of intelligent investment judgment and the violation of the Idaho Blue Sky Law, constitute not only common law fraud, but also constitute fraud under the Federal Securities Act of 1933."

It is the opinion of this Court that the district court erred in its conclusion of law that "the violation of the Idaho Bue Sky Law" can be a basis for the common law

---

1. See n. 5, infra.

fraud. It is difficult to understand from this conclusion of law whether the district court is holding that a violation of the Idaho Blue Sky Law provides an implied civil remedy, or whether such violations serve as a basis for an action in common law fraud.

In the first instance, the district court found that the salesman, Neilson, did not have a permit to sell stock at the time of his initial contact with Dr. Sharp on October 1, 1965. The record sustains this fact; however, the question is whether such fact is material to this action. The record clearly reflects that at the time of the stock sale on October 18, 1965, Neilson did have a permit authorizing him to sell stock. Next, the district court found that a statement of condition and supporting financial condition was not filed within twenty days after June 30, 1965. Furthermore, although the statement was filed September 8, 1965, no new application or prospectus was submitted. Finally, the district court found that at the time of the sale of the stock the corporation's "right to do business" (i. e., right to sell stock) in the State of Idaho had been forfeited under the provisions of I.C. § 26–1809.

We find no evidence of the appellant corporation's forfeiture of the right to do business. The record reveals the following facts. On July 1, 1965, the appellant corporation requested a two year extension of its permit to sell securities. The commissioner of finance granted the request in a letter dated the same day as the request. No statement of financial condition was submitted to the department of finance on July 1, 1965, nor within twenty days thereafter as required by I.C. § 26–1809.[2] Subsequently, on September 8, 1965, the corporation submitted a statement of financial condition to the department of finance.

The commissioner of finance's letter of July 1, 1965, was sufficient to grant the extension of time for the appellant corporation's permit to sell stock until the lapse of twenty days. The subsequent submission of the statement of financial condition then reinstated the authority to sell stock as of September 8, 1965. I.C. § 26–1809 did not eliminate the possibility of submitting a financial statement after the lapse of the twenty day statutory period. Of course, until the company has submitted such statement, it would be barred from doing business in this state. But, after the statement was filed, and after the extension of time for its permit was granted, the appellant corporation substantially complied with the requirements of the statute.

2. I.C. § 26–1809. "Reports of investment companies.—Every investment company, domestic or foreign, shall file at the close of business on December 31 and June 30 of each year, and at such other times as required by the department of finance, a statement verified by the oath of the copartnership or company, if it be a copartnership or company, or by the oath of a duly authorized officer, if it be an incorporated or unincorporated association, setting forth in such form as may be prescribed by the said department, its financial condition and the amount of its assets and liabilities, and furnishing such other information concerning its affairs as said department may require. Each regular statement of December 31 and June 30 shall be accompanied by a filing fee of * *ten* dollars * ($10.00). Any investment company failing to file its report at the close of business December 31 or June 30 of each year within twenty days of that date, or failing to file any other or special report herein required within thirty days after receipt of the request or requisition therefor, shall forfeit its right to do business in this state. Whenever any investment company has sold or issued all of the securities for which a permit was issued it shall forthwith notify the department of this fact in writing. After the date of such notification the reports required by this section no longer need be filed."

This statute was first enacted in 1913, S.L. Ch. 117. The statute was last amended in 1953, S.L. Ch. 60 sec. 2.

I.C. Title 26, Ch. 18 was repealed by S.L.1967, Ch. 394, § 59. That chapter also enacted what is now designated as the "Idaho Securities Act," now Title 30, Ch. 14. S.L.1967, Ch. 394, sec. 60 declared an emergency and that act was to be effective upon passage; it was approved April 10, 1967, subsequent to events involved herein.

Thus, sales of stock thereafter were not unlawful. This conclusion is further buttressed by the subsequent actions of the commissioner of finance. The file copy of the original permit issued by the commissioner, which by its terms expired July 1, 1965, had been endorsed extending the expiration date until 1967. Furthermore, the commissioner on October 12, 1965, issued to Neilson a certificate stating that he was registered to sell stock of the Idaho Investment Corporation. If the right of Idaho Investment Corporation to do business (or to sell its stock pursuant to the permit issued to it) had terminated, the commissioner would not have issued the certificate to Neilson.

■ The appellants have substantially complied with the provisions of the Idaho Blue Sky Law. Thus, there is no violation of that act.

### SECURITIES ACT OF 1933

The next question presented in this appeal concerns the applicability of the Federal Securities Act of 1933 (15 U.S.C.A. 77a et seq.). This Court cannot determine under which section or sections of that act the plaintiff pleaded his case or under which section or sections of that act the district court entered its judgment. In the complaint the respondents ambiguously alleged that "contrary to and in violation of the laws and statutes of the State of Idaho and the United States of America the said Defendants used unlawful sales and demonstration practices which are forbidden by law in the sale of stock to your Plaintiffs * * *." After an unsuccessful attempt to obtain specificity of the claims for relief in the interrogatory the appellants resorted to an order for a supplemental interrogatory. The respondents replied that "Title 26, Ch. 18, Idaho Code" and "the Securities Act of 1933 and the Securities Exchange Act of 1934, Section 10" had been violated.

The uncertainty over which law, if any, was violated is compounded upon reading the district court's conclusions of law which held the defendants in violation of the "Federal Securities Act of 1933."

■ Both Section 17(a) [3] and Section 12(2) [4] apply to securities or to transactions which are exempt from registration. Consequently, it is possible for a transaction exempt from registration to run afoul of the fraud provisions in Sections 12(2) and 17(a). The record in this case fails to show that the corporation's issue of stock was not exempted from Securities Exchange Commission registration requirements. The record does disclose that a consent decree pursuant to a Securities Exchange Commission injunction was entered in the federal district court for Idaho during August of 1966 forbidding the sale of Idaho Investment Corporation stock without registration. However, the nature of the Security Exchange Commission's complaint was not disclosed. Moreover, the record fails to indicate whether the consent decree covered the 1965 issue of stock from which Dr. Sharp made his purchase. Since there is no evidence of a Section 5 [5] violation which requires registration for all transactions and securities not otherwise exempt, the strict liability provision of Section 12(1) is inapplicable. Thus, the possibilities for the district court's conclusion narrows to either Section 12(2) or Section 17(a).

■ Several problems arise in applying Section 12(2) to this case. First, there is a problem with the statute of limitations under Section 13 [6] which limits any action brought under Section 12(2) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence * * *." Furthermore, Section 13 prohibits an ac-

---

3. 15 U.S.C.A. § 77q. Hereafter in this opinion reference will be made to the sections of the Securities Act of 1933, with citations to United States Code Annotated carried in the footnotes.

4. 15 U.S.C.A. 77*l*(2).

5. 15 U.S.C.A. 77e.

6. 15 U.S.C.A. 77m.

tion under Section 12(2) after three years of the sale even if the fraud is discovered and is brought within one year. Although the district court found the plaintiff's discovery of the fraud to be in 1967 this finding is not consistent with the trial record. Without elaborating the uncertainties and contradictions in the respondent's testimony on this point it is evident that the fraud was discovered in 1966 and not in 1967. Since the action commenced in 1968, the statute of limitations bars the action under § 12(2). Notwithstanding the difficulty of the statute of limitations issue there is a more compelling reason to conclude that there can be no liability predicated under Section 12(2) of the 1933 Act. For relief under Section 12(2) there must be the "use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact * * *." [7] The record does not disclose evidence indicating that at the time of the stock sale there was (1) the transmission of a prospectus in the mail, (2) an oral misrepresentation by the use of some means of interstate commerce, or (3) an omission of a material fact by the use of any instrument of interstate commerce. This Court concludes that Section 12(2) of the 1933 Act cannot serve as the basis for appellants' liability.

The only remaining section of the 1933 Act which could possibly serve as a basis for the plaintiff's cause of action and the district court's conclusion of liability under the 1933 Act is Section 17(a).[8] Under Section 17(a) of the 1933 Act the state statute of limitations for fraud governs actions brought thereunder. Sackett v. Beaman, 399 F.2d 884 (9th Cir. 1968). Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Since Idaho's limitation for fraud actions in I.C. § 5-218 is three years, there is no statute of limitations issue presented under Section 17(a).

As with other provisions of the securities acts, several courts have indicated that a private right of action will lie for the violation of the provisions of this section. E. g., Dack v. Shanman, 227 F.Supp. 26 (S.D.N.Y.1964); Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y.1955); Osborne v. Mallory, 86 F.Supp. 869 (S.D.N.Y.1949); Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), cert. den. 397 U. S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93. There is, however, dissatisfaction with this principle. See 6 Loss, Securities Reg. 3912 (1969). Cf. S. E. C. v. Texas Gulf Sulfur Co., 401 F.2d 833, 867 (2d Cir. 1968) (concurring opinion of Friendly, J.). A careful reading of the 1933 Act would seem to leave no doubt that Section 17(a) only gives rise to a liability to be restrained by injunctive action or, if wilfully done, to a liability to be punished criminally. E. g. H.R.Rep. No. 85, 73d Cong., 1st Sess. (1933) 9–10. However, we recognize that there are a number of affirmative holdings or dicta to the contrary. Pfeffer v. Cressaty, 223 F.Supp. 756 (S.D.N.Y.1963); Surowitz v. Hilton Hotels Corp., 342 F.2d 596, 604 (7th Cir. 1965) (with citations) rev'd on other grounds, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); Lynn v. Caraway, 252 F.Supp. 858 (W.D.La., 1966), aff'd per curiam, 379 F.2d 943 (5th Cir. 1967). In considering relief under the securities acts the federal courts have confronted cases simultaneously alleging violations of both Section 17(a) of the 1933 Act and rule 10b–5 of the 1934 Act. Although Section 17(a) and S.E.C. rule 10b–5 are almost identical, rule 10b–5 stands apart from Section 17(a) in its scope of relief. Only rule 10b–5 has an implied cause of action for civil damages. Since rule 10b–5 has been interpreted to imply a cause of action for damages, there has been no compelling reason for the courts to determine whether Section 17(a) also grants such an implied remedy. However, jurisdiction under the 1934 Act is exclusively in

---

7. 15 U.S.C.A. 77*l*(2).

8. 15 U.S.C.A. 77q(a).

the federal courts.[9] Whether the aggrieved buyer has a private right of action under Section 17(a) is still an open question.

> "Since we affirm only the award of compensatory damages, which could stand either on the basis of § 10(b) of the 1934 Act or § 17(a), we need not tarry over whether § 17(a) standing alone would support an action for compensatory damages." Globus v. Law Research Service, Inc., *supra*, 418 F.2d, at 1283.

*Compare*, Donlon Industries v. Forte, 402 F.2d 935 (2d Cir. 1968); Texas Gulf Sulphur, *supra*; Pinto v. Maremont Corp., 326 F.Supp. 165 (S.D.N.Y.1971). For a lucid analysis of the problem of implying a private cause of action in Section 17(a), see Chief Judge Lord's discussion of the salient points of the controversy in Dorfman v. First Boston Corp., 336 F.Supp. 1089 (E.D.Penn.1972).

■ Without deciding the nature of relief afforded by Section 17(a), i. e. whether Section 17(a) is limited to injunctive relief and penal sanctions or includes an implied private action for damages, we can find no evidence in this appeal indicating a violation of that section. Section 17(a) makes it unlawful for any person in the offer or sale of securities by means of interstate communication or use of the mails, to employ "any device, scheme, or artifice to defraud," or to obtain money by means of any untrue statement of a material fact or omission to state a material fact. The respondents have not met the burden of proof by showing any facts which merit sustaining their judgment in the district court under Section 17(a). Although the requirement for proving scienter under the securities acts may be more lax than is required under common law in this state, the respondents still have the burden of showing that there was, in fact, a misstatement or an omission with the use of interstate communication or some instrumentality of interstate commerce.

The requirements for a cause of action under Section 17(a) are explicit. First, there must be the use, directly or indirectly, of some instrumentality or means of interstate commerce. Second, there must be some fraudulent activity or misrepresentation:

> § 17(a) "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Since this Court cannot find any evidence or finding of fact to sustain liability under Section 17(a), we conclude that there is no basis for relief under the 1933 Act.

## COMMON LAW FRAUD

Dr. Sharp, the respondent, alleged in his complaint that Idaho Investment Corporation, through its agents, misrepresented material facts about the condition of the company. The district court found that there had been material misstatements and omissions by Idaho Investment Corporation and its agents in the stock sale to Dr. Sharp and concluded that Idaho Investment Corporation and its officers were liable for fraud. Because of the breadth and scope of the appellants' assignments of error this Court is compelled to analyze the extant facts and weigh them against the elements necessary to support a finding of fraud.

9. 15 U.S.C.A. 78aa.

Although the respondent framed a cause of action in his pleadings based on fraud, the substance of the complaint is of no assistance in isolating specific facts to sustain the district court's finding of fraud. Two paragraphs in the respondent's complaint are devoted to the issue of fraud. Since one of these paragraphs alleged the use of instrumentalities of interstate commerce, its allegations are germane only to possible violations of the Federal Securities Act of 1933. The other paragraph alleged that Idaho Investment Corporation through its agents induced the plaintiff to purchase stock by misstating material facts.[10] Moreover, the complaint failed to present any issue raising an omission of a material fact or the affirmative duty of appellants to disclose facts material to the transaction. Furthermore, the respondent, Dr. Sharp, framed his allegations of fraud on the basis of intentional misrepresentation. The complaint did not mention or draw any distinction between negligence or strict liability as alternative bases for finding fraud.

The district court concluded that Idaho Investment Corporation through its agents had misstated and omitted material facts in the sale of the stock to Dr. Sharp. To support this conclusion the district court made exhaustive findings of fact on the issue of fraud. The numerous findings of fact relate to alleged misstatements and omissions in Neilson's conversations with the plaintiff and various written material disseminated to the respondents by Idaho Investment Corporation through its agent, Neilson. Before we may sustain the district court's conclusion there must be clear and convincing evidence of the facts establishing the elements of an action in fraud.

To establish fraud the plaintiff has a difficult burden of proof. This Court in Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559 (1962), outlined the elements essential to prove fraud:

"To establish the allegation of fraud, a party must prove by a preponderance of the evidence all of the elements which are inherently contained in such allegation.

' * * * Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury. * * *' 37 C.J.S. Fraud § 3, pp. 215–216. See also 23 Am.Jur., Fraud and Deceit, sec. 20, p. 773.

\* \* \* \* \* \*

A party alleging fraud has the burden of proof. All elements of such allegation must be established by clear and convincing evidence. Barron v. Koenig, 80 Idaho 28, 324 P.2d 388; Scogings v. Love, 79 Idaho 179, 312 P.2d 570; Cooper v. Wesco Builders, 76 Idaho 278, 281

10. In summary, paragraph 9 of the complaint alleges:

A. That the prospectus misstated investments by appellant in its subsidiaries, and that the stated figures were false, fraudulent and untrue, inasmuch as the book value of the subsidiaries was materially less.

B. That the prospectus stated the expense of the stock sales would not exceed 17½%, which was untrue.

C. That certain bonuses, loans and gifts were paid to its officers.

D. That the appellants used a "pitch kit" using illustrations of the major insurance companies of America and the profits derived by them as examples of profits that purchasers of stock could expect, if they invested in appellant corporation. That the pitch kit was compiled with the intent to mislead purchasers.

E. That appellant by its agent told respondents that appellant corporation owned "certain valuable properties, manufacturing plants and * * * savings and loan association which were of a great value and were operating at a profit" but that such statements were untrue.

P.2d 669." 84 Idaho at 489–490, 373 P. 2d at 561.

Generally, all of these ingredients must be found to exist, and the absence of any one of them is fatal to recovery.

In reviewing the record this court is not convinced that there is proof to sustain the finding of (1) a false representation or omission of a material fact, and (2) the hearer's reliance thereon.

Critical to this case is the discovery of facts sustaining the district court's findings of misrepresentations. A false representation is the cornerstone to an action in fraud. There are three bases for laying the "cornerstone" in this case: oral misrepresentations, written false statements, and material omissions.

The only oral statements at issue are those made by the sales agent, Neilson, to the respondent. Moreover, the only witness to these statements is the respondent, Dr. Sharp. Dr. Sharp testified that in 1965 he purchased stock from the Idaho Investment Corporation. During October of 1965, Neilson contacted Dr. Sharp on three different occasions within a two week period. During Neilson's three visits Dr. Sharp was shown at least twice a "pitch kit" in a loose-leaf binder entitled "How to make your money make money while you sleep." This "pitch kit" consisted of numerous printed cardboard sheets containing statements, figures, and charts suggesting generally the profitability of life insurance companies as an investment. Neilson's "spiel" indicated that Idaho Investment Corporation would in the future attempt to put together the largest life insurance company in the western United States. From these statements it is impossible to find a misrepresentation of present or past existing fact.

 According to Dr. Sharp, Neilson also described the business and profitability of Idaho Investment Corporation's subsidiaries. Dr. Sharp characterized these statements as intentional misrepresentations. Accepting this argument, the district court found these statements to be intentional false representations. We believe this to be error for two reasons. First, the evidence is far from being clear and convincing that these statements were in fact false. Second, there is no evidence that these statements were about present or past existing facts, but the statements pertained to anticipated corporate performance. Without elaborating on the latter point there is a general rule in law of deceit that a representation consisting of promise or a statement as to a future event will not serve as basis for fraud, even though it was made under circumstances as to knowledge and belief which would give rise to an action for fraud had it related to an existing or past fact. Pocatello Security Trust Co. v. Henry, 35 Idaho 321, 206 P. 175 (1922); 37 Am.Jur.2d, Fraud & Deceit, § 57.

 As in many cases the general rule has almost become the exception. Idaho recognizes two exceptions to the general rule about statements or promises *in futuro*: (1) fraud may be predicated upon the nonperformance of a promise in certain cases where the promise is the device to accomplish the fraud. Pocatello Security Trust Co. v. Henry, *supra*; Miller-Cahoon Co. v. Wade, 38 Idaho 484, 221 P. 1102 (1923); (2) in cases where promises are blended or associated with misrepresentations of fact, there is fraud if a promise is accompanied with statements of existing facts showing the ability of the promisor to perform the promise without which it would not have been accepted or acted upon. Pocatello Security Trust Co. v. Henry, *supra*; Keane v. Allen, 69 Idaho 53, 202 P.2d 411 (1949). Opinions or predictions about the anticipated profitability of a business are usually not actionable as fraud. However, when there is an affirmative promise or statement that a certain act will be undertaken, such a statement is actionable providing the other elements of fraud are shown. *See,* 51 A.L.R. 49 et seq.; 91 A.L.R. 1295; 125 A.L.R. 879; 27 A.L.R.2d 19; cf. 18 Am.Jur.2d, Corporations § 330; 18 C.J.S. Corporations, § 327. Assuming that

Neilson's statements were in fact promises or statements that a certain act would be done, we can find no evidence establishing any of the elements of fraud, i. e. intent, knowledge of falsity, etc. Actually, these statements of Neilson can be characterized as "puffing."

We turn now to certain written materials disseminated by Idaho Investment Corporation which may contain false representations of fact. Although the district court found that misrepresentations had been made in the "pitch kit," prospectus, sales material, bulletins and "other written material," there is no indication of which statements in particular were false. In reviewing the numerous exhibits we conclude that there are no misrepresentations. True enough, optimism and enthusiasm pervade the sales material. However, the respondent has not carried his burden of producing clear and convincing evidence of the falsity of any statement in the written material supposedly relied on by Dr. Sharp. The record fails to support the finding that Idaho Investment Corporation issued written material containing intentional misrepresentations.

■ As a final basis for imposing liability on Idaho Investment Corporation we must consider the omission of facts material to the transaction which deprived the respondent of exercising his business investment judgment. The district court found that Idaho Investment Corporation "omitted certain facts" which deprived the respondents of a "fair and honest" opportunity to evaluate the stock. First, we are unable to determine whether such omissions were intentional or negligent. Second, we are unable to discover the extent or exact nature of the omissions. Third, there is no evidence showing that such omissions, if there were any, were material. Indeed, the respondents never alleged in the complaint that material facts had been omitted. There is no evidence in the record which supports a conclusion that omissions concerning the financial status of Idaho Investment Corporation were of such a nature that Dr. Sharp would not

have purchased the stock had the omissions been revealed. Furthermore, Dr. Sharp did not read the prospectus or offering circular until after he had purchased the stock. Thus, any omission in the prospectus was not material to his decision to purchase.

■ Finally, the element of reliance merits discussion in this case. The district court found that the respondents relied on the oral statements made by Neilson and the prospectus circulated to buyers by Idaho Investment Corporation. Reliance is a fundamental element of fraud which must be proven by clear and convincing evidence. In order for the respondent, Dr. Sharp, to secure redress he must have, in fact, relied upon a statement or representation as an inducement to purchase the stock. We find a notable absence of the element of reliance supporting the district court's finding of fraud.

On direct examination Dr. Sharp was asked: "Doctor, would you tell me why you purchased stock in the Idaho Investment Corporation?" Dr. Sharp replied, "Because I believed Mr. Neilson. I was acquainted with Mr. Frazier and other officers of Sierra Life. I knew the officers and expected it to be a profitable venture." This answer reveals a common theme which appears throughout the record. Dr. Sharp was an investor in Sierra Life Insurance Company, an Idaho corporation. By coincidence most of the officers of Idaho Investment Corporation were officials of Sierra Life Insurance Company. For example, Fred Frazier was president of both Idaho Investment Corporation and Sierra Life Insurance Company. Although this inter-locking feature of corporate officials was publicized extensively by Idaho Investment Corporation in its sales materials and company news bulletins, neither the respondents nor the district court chose to attach any significance to its connection with the element of reliance. From Dr. Sharp's own testimony it is evident that rather than relying on representations or misstatements by Idaho Investment Corpo-

ration and its agents he relied on expectations based on his experience with another corporation.

There is also no evidence in the record to support the finding that Dr. Sharp relied on the offering circular. Dr. Sharp testified that he never read the offering circular until after he purchased the stock. To be actionable the representation must have been relied on at the time of the transaction. We conclude that there is no evidence in the record to support a finding of reliance.

In summarizing the fraud count respondents have failed to establish the falsity of alleged misrepresentations or the existence of a material omission. Furthermore, without discussing the other elements necessary to sustain an action in fraud, we can find no evidence of reliance on an oral misrepresentation written false statement, or an omission of a material fact.

Judgment reversed. Costs to appellants.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.