597 P.2d 217

**Brian L. SMITH, Robert E. Smith, and Opal B. Smith, Plaintiffs-Appellants,**

v.

**Robert KING, Defendant-Respondent.**

No. 12302.

Supreme Court of Idaho.

July 2, 1979.

Darla S. Williamson of Williamson & Killen, McCall, for plaintiffs-appellants.

Dean E. Miller of Gigray, Miller, Downen & Weston, Caldwell, Robert H. Remaklus of Remaklus & Pittinger, Cascade, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from a judgment in favor of defendant-respondent in an action brought by plaintiffs-appellants Smiths seeking the recovery of payments made under a real estate contract, together with additional damages on the basis that de-

fendant-respondent King fraudulently induced the Smiths to purchase certain real business property. We affirm.

During August of 1973, the Smiths became interested in purchasing a bar in the vicinity of Donnelly, Idaho, known as "The Club," which was owned by King. Negotiations were instituted, during which the Smiths requested an examination of the books and records of The Club, but King stated he did not keep books or records. The trial court found that King told the Smiths The Club grossed between $200–$300 on a week day and between $400–$500 a day during weekends. King indicated that about 50% of his gross income was profit and that his utilities cost about $100 per month. King stated that The Club had taken in $1,500 during the preceding week and such amount would be a good indication of the average weekly gross. King also advised the Smiths, however, that the profits of The Club under his management would be irrelevant since different management could effect the profitability of the business.

Some days later the Smiths decided to buy The Club and Robert Smith stated at that time that The Club would be a good investment even if it produced only half of the profit that King had stated he was obtaining. On December 3, 1973, the parties entered into an agreement for the sale and purchase of King's interest in The Club. The total purchase price was in the amount of $49,500, $14,355 to be paid at the time of the execution of the contract, the assumption of an outstanding contract balance of $11,040, and thereafter monthly installments of $175 per month.

The Smiths took possession of The Club on December 2, 1973, and operated it until February 23, 1975. The evidence indicated that during that period the Smiths failed to realize the amount of gross income which King had indicated that he had received during his operation, although in the months of May 1974 through September 1974, the Smiths' gross income from The Club exceeded King's estimate of the income he had obtained. The Smiths volun-

tarily returned The Club to King in February 1975, and the parties entered into a rescission agreement which preserved the claims and defenses of each against the other.

This suit then ensued, with the Smiths alleging that King knowingly misrepresented The Club's average daily gross receipts and the percentage of the gross income that would be net profit. They allege further that he failed to disclose the full operating costs of The Club and misrepresented the costs of the utilities. They sought recovery of $18,000, representing payments made on the contract, and approximately $20,000, representing costs, improvements, and investments made by them in the property, together with additional general and punitive damages.

During trial the Smiths offered exhibits to show that King had substantially misrepresented the earnings and expenses of the business during the time of King's operation. King's 1973 federal income tax return indicated that The Club grossed only $14,-000 during the period King operated The Club in 1973. Utility expenses during that time were listed as $1,678. King's Idaho state sales tax returns for April through November of 1973 indicated sales for the business averaged roughly $1,643 per month. King testified at trial, however, that those tax returns did not accurately portray the business of The Club and that his statements to the Smiths regarding the earnings of The Club during his operation had been a fair and accurate statement.

The district court concluded that the Smiths had not proven clearly and convincingly that King's representations regarding gross receipts income were false. The court considered the discrepancy between the figures quoted by King and those which were contained on his tax returns were attributable more logically to King's practice of concealing income from the taxing authorities, rather than inaccuracy in his statements to the Smiths. Of considerable significance are the findings of the trial court that the evidence was insufficient to show clearly and convincingly that King intended

the Smiths to rely on his statements, that the Smiths had a right to rely on King's statements, or that the Smiths did rely on King's statement. The court also found that King's statement regarding the costs of utilities was not a material misrepresentation. The court did not find in favor of the Smiths on any of their allegations of misrepresentation or nondisclosure.

■ A party alleging a cause of action based on fraudulent misrepresentation must prove each of the following elements:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Mitchell v. Siqueiros*, 99 Idaho 396, 401, 582 P.2d 1074, 1079 (1978). *See also, Sharp v. Idaho Investment Corp.*, 95 Idaho 113, 504 P.2d 386 (1972); *Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972); *King v. H. J. McNeel, Inc.*, 94 Idaho 444, 489 P.2d 1324 (1971); *Gillingham v. Stadler*, 93 Idaho 874, 477 P.2d 497 (1970); *Walker v. Nunnenkamp*, 84 Idaho 485, 373 P.2d 559 (1962).

■ A party alleging fraud has the burden of proof and all elements of such allegation must be established by clear and convincing evidence. The absence of one of those elements is fatal to recovery. *Sharp v. Idaho Investment Corp., supra; Barron v. Koenig*, 80 Idaho 28, 324 P.2d 388 (1958).

■ The issue as to whether fraud has been proven by clear and convincing evidence is for the determination of the trier of fact. On appeal that determination will not be reversed where supported by competent, substantial, though conflicting evidence. *Nelson v. Armstrong*, 99 Idaho 422, 582 P.2d 1100 (1978); *Shrives v. Talbot*, 91 Idaho 338, 421 P.2d 133 (1966). We have reviewed the record and although the evidence is conflicting, there is substantial and competent evidence to support the trial court's findings of fact in this regard, and they are, therefore, affirmed.

After the close of trial, but prior to the judgment, the Smiths submitted a brief to the district court in which they requested relief from the forfeiture provisions of their contract with King.[1] The court issued a memorandum decision in which it declined to consider the issue of relief from the forfeiture provision because it was not raised by the pleadings and there had been no motion to amend the pleadings to conform to the evidence. The Smiths then moved for an order allowing them to amend their pleadings on the grounds that the evidence at trial sufficiently raised the issue of relief from the forfeiture. The Smiths argue that the forfeiture provision is unenforceable as a "penalty" under the theory of *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954).

The court denied the motion to amend their pleadings and found that to determine the issue of whether the Smiths should be relieved from the forfeiture on the ground that it constituted an unenforceable penalty, there must be evidence from which the court could determine whether the amount of liquidated damages provided in the forfeiture clause bore a reasonable relationship to the defendant's actual damages. The

---

1. The forfeiture provision of the King-Smith contract provides as follows:

"In the event that Buyers fail or neglect to make good any matters of which they are in default within the time herein provided, then Seller, without further notice, may declare this contract forfeited, and upon a forfeiture being declared, Seller shall have the right to immediate possession of said premises, and Buyers agree that they will immediately surrender possession thereof to Seller in as good condition as they received the same, depreciation from reasonable use and occupancy excepted. Upon a forfeiture being declared and becoming effective, all monies theretofore paid by the Buyers to the Seller and any improvements thereon shall be kept and retained by Seller to apply on the occupancy of said premises, but no provision contained in this contract shall be an election of remedies, and Seller shall have the right, at his option, to bring any action at law or equity, to enforce the terms of this contract or to seek restitution for damages."

trial court concluded that issue had not been litigated.

I.R.C.P. 15(b) provides that a motion to amend pleadings to conform to the evidence should be granted "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties . . ." Thus, the trial court was required to determine whether the issue of forfeiture as being an unenforceable penalty was, in fact, tried with the express or implied consent of the parties. The formality of amendment of the pleadings is not necessary if the court concludes that the issues were, in fact, so tried. *Lynch v. Cheney*, 98 Idaho 238, 561 P.2d 380 (1977).

In a discussion of the comparable federal rule, Wright and Miller state:

"The decision whether the issue has been tried by express or implied consent is a matter of the trial court's discretion and will not be reversed except on a showing of abuse. But once the court determines that the issue has been litigated with the consent of the parties, it has no discretion to deny the motion to amend. . . . [I]f the court is sitting without a jury, the judge must make a finding on the issue as required by Rule 52." 6 Wright and Miller, Fed. Practice & Procedure Civil § 1493.

We hold that the determination of whether an issue has been so tried is within the discretion of the trial court and such determination will only be reversed when that discretion has been abused.

The Smiths on appeal contend that the trial judge did abuse his discretion since they presented sufficient evidence to show that the forfeiture provision of the contract should be found unenforceable as a penalty under the theory of *Graves v. Cupic, supra,* and its progeny.

In *Graves v. Cupic, supra,* the court stated:

"Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to the actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a 'penalty,' and the contractual provision therefore is void and unenforceable.

\*    \*    \*    \*    \*    \*

In *State ex rel. Robins v. Clinger*, 72 Idaho 222, 238 P.2d 1145, we held the measure of damages for breach of a contract for the sale of realty to be the difference between the contract price and the market value of the property at the time of the breach, unless by the contract the parties had stipulated otherwise. No possession or rental value was there involved. Generally where the defaulting purchaser has had possession of the property the damage due the vendor is enhanced by the rental value during such occupation." At 457, 459, 272 P.2d at 1025.

Here, the Smiths failed to offer sufficient evidence of the lack of a reasonable relationship between the actual damages sustained by King from Smiths' breach and the liquidated damages provided by the forfeiture provision. The Smiths offered evidence to prove the amounts paid to King under the terms of the contract, and the value of certain improvements they had made to the property. However, there was no evidence offered to prove the actual damage suffered by King as a result of the Smiths' breach of the contract. As stated in *Graves v. Cupic, supra,* the usual measure of actual damages for breach of an executory contract of sale is the difference between the contract price and the market value of the premises at the time of the breach. *Anderson v. Michel*, 88 Idaho 228, 398 P.2d 228 (1965); *Melton v. Amar*, 83 Idaho 99, 358 P.2d 855 (1961); *State ex rel. Robins v. Clinger*, 72 Idaho 222, 238 P.2d 1145 (1951). As also stated in *Graves v. Cupic, supra,* those damages are usually enhanced by the

rental value of the premises during the occupation by the purchasers.

 In the case at bar, there was no evidence offered to prove the market value of the property at the time of the breach. Testimony was offered by the Smiths that the value of the property was $17,000 at the time of the execution of the contract. Clearly, that testimony was offered in support of the Smiths' allegations that they had been defrauded by King. Such evidence, standing by itself, could do nothing but support the theory that King suffered actual damages, as defined by *Graves v. Cupic, supra*, for the difference between the contract price and the market value at the time of the breach. Further, that testimony related to the value at the time of the execution of the contract, rather than the value at the time of the breach of the contract. Further, there was no evidence offered to prove the rental value of the premises during the period of the Smiths' occupation. The only evidence regarding rental value was that paid during the time that King occupied the premises some years before and prior to the time that King purchased the premises. That evidence was also offered in support of the Smiths' theory of fraud.

We hold that the trial court did not err or abuse his discretion in his denial of the Smiths' motion to amend the pleadings. The judgment of the district court is affirmed. Costs to respondent.

BISTLINE, J., and SCOGGIN and DUNLAP, JJ. pro tem., concur.

BAKES, J., sat, but did not participate.