613 P.2d 1338

Thomas E. FAW and Lois E. Faw, husband and wife, Plaintiffs-Appellants,

v.

Bill GREENWOOD and Sylvia Greenwood, husband and wife, Defendants-Respondents.

No. 13129.

Supreme Court of Idaho.

July 17, 1980.

Gary A. Finney, Sandpoint, for plaintiffs-appellants.

James E. Hunt of Greene & Hunt, Sandpoint, for defendants-respondents.

BAKES, Justice.

Plaintiff appellants Thomas and Lois Faw brought suit against defendant respondents Bill and Sylvia Greenwood for fraud and misrepresentation, seeking damages and rescission of a contract for the sale of the Greenwoods' business. The Greenwoods counterclaimed for breach of contract, seeking proceeds allegedly due from a consignment sales agreement. The district court, sitting without a jury, rejected the Faws' claim and held for the Greenwoods on their counterclaim. We affirm.

The Greenwoods commenced doing business in November of 1974. The business consisted of retail sales, service and installation of various electrical supplies and appliances. In May, 1975, they decided to sell the business and so "listed" it with a sales agent, Rainbow Realty. The business included no real estate. The agent's employment contract listed the business's gross annual receipts at $140,000 and net annual profits at $26,000. These figures were provided to the sales agent by Mr. Greenwood. Mr. Greenwood had calculated the figures in the following manner. He took the gross receipts for his first six months of operation and doubled that amount to arrive at a yearly figure. To this amount he added 15% for anticipated growth, arriving at an estimated $142,494 in annual gross receipts. He then estimated profit to be about 20% of gross, or $28,498. Finally, he reduced these figures slightly to the amounts listed on the agent's employment contract. The estimated 20% income-to-gross ratio was not based upon the past performance of the business. In formulating this projection, Greenwood received assistance from his accountant, Leaverton.

The Faws came to Sandpoint in June of 1975, talked to the Rainbow Realty sales agent and were given the above financial information. The sales agent did not explain how the $26,000 net profit figure was estimated, but did advise the Faws to examine the books of the business. On June 19, 1975, they put $1,000 down on the business and signed an earnest money agreement. Soon thereafter, the Faws met the Greenwoods for the first time. At such time, the Faws had the opportunity to examine the Greenwoods' books and operating statements, and briefly did so. Mr. Faw testified that he recalled seeing a "profit and loss" statement for April or May of 1975 showing a year-to-date net income of $12,000. Greenwood denied that such a "profit and loss" statement existed. He testified that the "profit and loss" statements shown to the Faws were the same ones introduced at trial. While none of these statements showed a year-to-date net of $12,000, they did not accurately reflect the profit or loss of the business. They were actually some type of operating or cash flow statements which did not take into account the difference between beginning-of-year inventory and current inventory.

The so-called "profit and loss" statements for April and May of 1975 showed a year-to-date net loss of $547.39 and $1,074.21, respectively. It was in May that Mr. Greenwood estimated the projected income of the business as $26,000. Since no current actual inventory was taken at that time, the actual year-to-date net profit cannot be determined. It is not entirely clear that either Mr. Faw or Mr. Greenwood understood the inaccuracy in the "profit and loss" statements.

In any event, the record does reflect that prior to closing the sale the Faws were aware that the business had only been operating for six months and that therefore the estimated $26,000 yearly net profit was only a projection. Mr. Greenwood testified that this was explained to Mr. Faw.

The sale was completed on June 30, 1975, when the Faws paid the Greenwoods $19,000, the remainder of the purchase price. The Faws operated the business for three months before closing it and selling out. This suit followed.

After a trial, the district judge issued a memorandum decision dismissing the Faws' complaint. He found that the Faws were well aware that the Greenwoods had been in business for only half a year and that the income projection of $26,000 was based only on a half year's sales; that the Faws had ample opportunity to completely examine the Greenwoods' books; that the Faws were "more than likely" misled by "an alleged profit and loss statement prepared by a local accounting firm that, in fact, was a cash flow statement"; and that rescission would not be possible since the inventory had all been sold and the parties could not therefore be returned to the *status quo*. The court also found that the Faws had agreed to sell and did sell some items on consignment for the Greenwoods, but failed to pay the proceeds to the Greenwoods. The judge therefore awarded the Greenwoods $2,100 on their counterclaim and entered judgment on their behalf. We affirm that judgment.

 The elements of actionable fraud or misrepresentation are as follows:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Mitchell v. Siqueiros*, 99 Idaho 396, 401, 582 P.2d 1074, 1079 (1978).

*Accord Smith v. King*, 100 Idaho 331, 597 P.2d 217 (1979); *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977); *Sharp v. Idaho Investment Corp.*, 95 Idaho 113, 504 P.2d 386 (1972); *Zuhlke v. Anderson Buick, Inc.*, 94 Idaho 634, 496 P.2d 95 (1972). The party alleging the fraudulent misrepresentation has the burden of proving all these elements by clear and convincing evidence. *Smith v. King, supra; Gneiting v. Clement*, 96 Idaho 348, 528 P.2d 1283 (1974); *Sharp v. Idaho Investment Corp., supra; Zuhlke v.*

*Anderson Buick, Inc., supra; Barron v. Koenig*, 80 Idaho 28, 324 P.2d 388 (1958).

 "The issue as to whether fraud has been proven by clear and convincing evidence is for the determination of the trier of fact. On appeal that determination will not be reversed where supported by competent, substantial, though conflicting evidence." *Smith v. King*, 100 Idaho at 334, 597 P.2d at 220.

The trial court found that the Faws were well aware that the $26,000 net profit figure was an estimated projection of the profitability of the business based on only six months of operation. It also found significant the fact that the Faws had the opportunity to examine the books and the "profit and loss" statements of the business, and did so. Appellants argue that the fact that they could have ascertained the truth by independent investigation is not a defense to the fraud action, citing *Sorenson v. Adams*, 98 Idaho 708, 715, 571 P.2d 769, 776 (1977). We think that is a correct statement of the law as far as it goes. However, when a purchaser is given the opportunity to conduct an independent investigation of the records and does so, it is generally held that he is not entitled to rely on alleged misrepresentations of the seller. *See Walker v. Nunnenkamp*, 84 Idaho 485, 373 P.2d 559 (1962); *Petersen v. Holland*, 79 Idaho 63, 310 P.2d 810 (1957); *Smith v. Johnson*, 47 Idaho 468, 276 P. 320 (1929); Annot., 61 A.L.R. 492, 537 (1929); 37 Am.Jur.2d Fraud & Deceit § 237 (1968). Not only did the Faws examine the books, but Mr. Faw insisted on doing so prior to finalizing the sale. The trial court found, based upon that evidence, that the Faws were not entitled to rely on the Greenwoods' $26,000 annual net income projection. Since the district court's decision is supported by substantial, competent, though conflicting evidence, we affirm its determination that the plaintiffs failed to prove by clear and convincing evidence the elements of actionable fraud.

 The appellants next contend that the parties' alleged consignment arrange-

ment, which was the basis of the Greenwoods' counterclaim, is unenforceable due to non-compliance with the UCC statute of frauds, I.C. § 28–2–201. The UCC statute of frauds provision requires that contracts for the sale of goods for the price of $500 or more must be evidenced by a sufficient writing. The Faws contend that an agreement to sell on consignment is a "sale" within the meaning of the UCC. I.C. § 28–2–106(1). The Greenwoods contend just the opposite. The UCC provides that a contract not satisfying the statute of frauds is nonetheless enforceable if the party against whom enforcement is sought admits in his testimony that a contract was made. I.C. § 28–2–201(3)(b). As the trial court noted, Mr. Faw confirmed the existence of this agreement while testifying. Thus, whether or not the consignment arrangement constituted a sale within the meaning of the UCC, this agreement is enforceable. Under the circumstances, the Faws cannot rely upon the defense of statute of frauds.

█ Appellants also contend that the trial court erred in awarding attorney fees to respondents. The respondents prevailed below both in defending against the appellants' claim and in pursuing their own counterclaim. The appellants have not shown that the award made in this case constituted an abuse of the district court's discretion, and the award is therefore affirmed.[1] *Levra v. National Union Fire Ins. Co. of Pittsburgh*, 99 Idaho 871, 590 P.2d 1017 (1979).

The judgment below is affirmed. Costs to respondents. No attorney fees allowed.

DONALDSON, C. J., SHEPARD and McFADDEN, JJ., and KRAMER, J. pro tem., concur.

---

1. Judgment in this case was entered prior to this Court's adoption of I.R.C.P. 54(e), effective March 1, 1979, which now governs the award of attorney fees made pursuant to I.C. § 12–121.