# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40581

FRONTIER DEVELOPMENT GROUP, )
LLC, MICHAEL HORN, )
)
    Plaintiffs-Counterdefendants- )
    Respondents, )     **Idaho Falls, May 2014 Term**
)
v. )     **2014 Opinion No. 92**
)
LOUIS CARAVELLA, PATRICIA )     **Filed: August 28, 2014**
CARAVELLA, )
)     **Stephen Kenyon, Clerk**
    Defendants-Counterclaimants- )
    Appellants, )
)
and )
)
YELLOWSTONE DO IT CENTER, LLC, )
)
    Plaintiff-Counterdefendant. )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Hon. Gregory W. Moeller, District Judge.

The district court's judgment is <u>affirmed</u> in part, <u>reversed</u> in part, and the case is <u>remanded</u> for further proceedings.

Racine, Olson, Nye, Budge & Bailey, Chartered, Idaho Falls, for appellants. Brent Whiting argued.

Moore & Elia, LLP, Boise, for respondents. Michael J. Elia argued.

_____

HORTON, Justice.

This case arises from the breach of a residential construction agreement. Homeowners Louis and Patricia Caravella appeal from the district court's judgment, following a court trial, dismissing their fraud counterclaim against respondents, Frontier Development Group, LLC (FDG) and Michael Horn, FDG's owner/manager. The Caravellas also appeal from the district court's decision that Horn was not personally liable for the award of damages and attorney fees entered against FDG. We affirm the district court's judgment in part, reverse in part, and remand.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Richard Myers owned the property at issue in this case. At the time, the property was subject to a deed of trust in favor of First Horizon Home Loans. Myers enlisted Horn and FDG to build a residence on the property, which First Horizon financed. However, in April of 2007, Myers filed for bankruptcy, and First Horizon rescinded the construction loan and instructed FDG to halt construction. When construction was stopped, the project was only fifty percent complete. Significant portions of the structure remained unfinished, including the roof, exposed door and window openings, and structural framing. The structure was left exposed to the elements for fourteen months.

While Horn was working for Myers, he submitted draw requests to First Horizon for payment for labor and materials. Horn's draw requests provided "all of the funds that are requested … will be used to pay for the labor and materials which created the improvements to the subject property." Each draw request also provided that "the improvements completed to the subject property were completed as per the 'Plans and Specifications' originally submitted to the Lender, except for the 'Change Orders' listed below." Accompanying each draw request, Horn also delivered to First Horizon an affidavit which certified that all bills from the previous draw had been paid and that the funds sought were for additional work. After reviewing First Horizon's disbursement spreadsheet, the district court found that "Horn submitted numerous draw requests and was paid for construction labor and materials that were apparently never installed in the home or later found on the property when it was purchased by the Caravellas."[1] The work performed by Horn for Myers had numerous substantial latent defects.

Following Myers' bankruptcy, foreclosure proceedings were initiated, and Myers hired Horn's wife, Kathleen Horn, of Windermere Real Estate/Teton Valley to list the property for sale. In March of 2008, the Caravellas, who were Ohio residents, became interested in purchasing or building a home in the Teton Valley area. The Caravellas' real estate agent, Mark Griese, put them in contact with Kathleen Horn who provided them with information on the dormant Myers project. Kathleen Horn eventually put the Caravellas in touch with Horn.

Beginning on March 17, 2008, the Caravellas and Michael Horn began to exchange emails about the property. Horn's email address during these communications was

---

[1] When discussing its finding that Horn billed the Caravellas for materials that did not find their way into the home, the district court later stated: "FDG's and Horn's prior dealings with [Myers] and First Horizon also showed a pattern of billing for materials that were never used in constructing the home."

2

"builder@openrangehomes.com." By email, Horn informed the Caravellas that the property had been untouched for one year and that First Horizon would not sell the property for less than $800,000. The district court found the Caravellas to be credible when they testified that Horn repeatedly represented that the property was worth $1.2 million and that he was "the best builder" in the Teton Valley. Based on the information Horn provided to the Caravellas, they made an offer of $749,000 for the property. Myers, through Kathleen Horn, countered at $799,000. Less than two hours after the counteroffer was signed and delivered to the Caravellas, Horn recorded a mechanics lien for $23,000 on behalf of FDG against the property. The Caravellas accepted the counteroffer later that evening.

Horn formed FDG to operate his business as a general contractor. Horn registered an assumed business name, "Open Range Homes," for FDG with the Idaho Secretary of State. Horn's wife owns a small percentage of FDG, but she does not participate or have any duties in the operation of FDG. FDG is directed exclusively by Horn. FDG has never hired any employees. FDG did not own any assets at the time of trial. Horn takes all of FDG's profits as personal income, collecting the money in lump sums rather than receiving a specified compensation as a manager or employee of FDG.

In late April of 2008, the Caravellas traveled to the Teton Valley, met with Horn, and spent two days inspecting the property. During the inspection, Horn pointed out two potential problems with the house, a missing support and an inadequate structural beam. The Caravellas testified that Horn minimized issues with the house, telling them that it was "in good shape," "structurally sound," and a "great house." Despite the prospect of paying $799,000 for a partially completed house that had been exposed to the elements for fourteen months, the Caravellas chose not to have a professional inspection performed and closed on May 5, 2008.

After closing, the Caravellas and Horn agreed that Horn would complete construction on the house in accordance with Myers' original plans in discrete stages as funds became available. In reaching this agreement, the Caravellas testified that they believed they were dealing with Horn as an individual. The Caravellas and Horn agreed that the first phase of construction would be used to correct structural defects and to enclose the house to protect it from the elements. The total contract price for the first phase of work that the Caravellas authorized was $88,500. However, the Caravellas paid FDG $138,097.24 for the first phase before refusing to pay any more. Much of the money that the Caravellas paid to FDG was for unauthorized work or work

3

that was completed in a nonconforming or substandard manner. The Caravellas hired a second builder, Jared Kay, to complete the first phase and to remedy the substandard work. In total, the Caravellas paid Kay $63,000.

FDG initiated this action on February 20, 2009, by filing a complaint to foreclose on a lien for construction services and building materials provided to, but not paid for by, the Caravellas.[2] On April 6, 2009, the Caravellas answered, counterclaimed, and joined Horn as a co-counterdefendant. The Caravellas filed an amended counterclaim on October 19, 2009, alleging that FDG and Horn: (1) breached the parties' contract; (2) breached the duty of good faith and fair dealing; (3) violated the Idaho Consumer Protection Act; (4) breached the implied warranty of habitability; (5) committed slander of title; (6) committed fraud and misrepresentation; (7) engaged in a civil conspiracy; and (8) acted negligently. Horn and FDG answered the amended counterclaim on November 12, 2010. The matter proceeded to a court trial. At the conclusion of the trial, the district court ordered the parties to submit proposed findings of fact and conclusions of law and their closing arguments in writing.

On March 29, 2012, the district court issued its findings of fact and conclusions of law. The district court held that FDG's lien was defective and dismissed it. The district court also held that FDG breached its contract with the Caravellas by: (1) failing to complete agreed upon work in conformity with the plans and in a workmanlike manner; (2) charging the Caravellas for unauthorized and defective work; and (3) substantially overbilling the Caravellas for work and materials that were not authorized and never provided. The district court concluded that the breach of contract damaged the Caravellas in the amount of $114,028.04. As to the Caravellas' fraud counterclaim, the district court concluded that the Caravellas failed to establish all nine elements of fraud and dismissed the claim. The district court also concluded that Horn was not personally liable.

On October 31, 2012, the district court issued its memorandum decision regarding attorney fees, costs, and prejudgment interest and awarded the Caravellas $113,775.45 in attorney fees, $5,484.83 in costs as a matter of right, and $200.00 in discretionary costs. The district court issued its final judgment on October 31, 2012. The Caravellas timely appealed.

---

[2] Yellowstone Do It Center, LLC, one of FDG's material suppliers, also filed a complaint to foreclose on a materialmen's lien against the Caravellas and the actions were consolidated. However, Yellowstone is not a party to this appeal.

## II. STANDARD OF REVIEW

We review a district court's bench trial decisions to determine "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Independence Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006). This Court will set aside findings of fact only when clearly erroneous. *Id.* We will not disturb findings supported by substantial and competent evidence, "even if the evidence is conflicting." *Id.* "It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses." *Thorn Springs Ranch, Inc. v. Smith*, 137 Idaho 480, 484, 50 P.3d 975, 979 (2002). We, therefore, liberally construe a trial court's findings "in favor of the judgment entered." *Id.* (internal quotation marks omitted). When it comes to matters of law, however, we are not bound by the trial court's conclusions; this Court is free to "draw its own conclusions from the facts presented." *Id.*

*Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 768, 264 P.3d 400, 407 (2011).

## III. ANALYSIS

The Caravellas' appeal asserts that the district court erred in its finding that they failed to prove their claim of fraud and that Horn was not personally liable to them. Both the Caravellas and FDG seek an award of attorney fees incurred in connection with this appeal. We discuss these issues in turn.

### A. The Caravellas failed to establish their fraud claim by clear and convincing evidence.

The district court's conclusions of law state:

Horn/FDG made some materially false statements[3] of fact to the Caravellas to induce their reliance. The Court also concludes that Caravellas were ignorant of the falsity of the statements and justifiably relied upon them to their detriment. These statements concerned:

    a. the condition, quality, and value of the home and workmanship of the construction performed on the home before they purchased it;
    b. the progress and quality of work FDG performed on the project pursuant to his contract with them; and
    c. the cost of material used in the construction.

The district court ultimately held that the Caravellas established eight of the nine elements of fraud but that the court could not "conclude that Caravellas established *by a preponderance of the evidence* that Horn … knew [his] statements were false." (Emphasis added). The Court went on to state:

---

[3] The district court failed to identify the specific statements it found to be materially false.

> There is no evidence in the record that Horn was actually aware of the poor worksmanship of the framing, flashing and other places in the home …. Although the Court was presented with facts that seriously call Horn's competence as a general contractor/builder into question, the Court cannot conclude *by a preponderance of the evidence* that the actions of Horn … were fraudulent.

(Emphasis added). Perhaps because the district court found that the Caravellas failed to prove this element, it did not explain its conclusion that the Caravellas proved the remaining eight elements of fraud.[4]

### 1. The district court erred by applying the incorrect evidentiary standard to the Caravellas' fraud counterclaim.

We have frequently identified the elements of an action for fraud or misrepresentation as follows:

> (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002) (quoting *Hines v. Hines*, 129 Idaho 847, 851, 934 P.2d 20, 24 (1997)). Although not material to our analysis today, we note that this formulation is incomplete as to the fourth element. A proper and complete statement of the fourth element is: "(4) the speaker's knowledge about its falsity or ignorance of its truth." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005); *Dengler v. Hazel Blessinger Family Trust*, 141 Idaho 123, 127, 106 P.3d 449, 453 (2005); *Staff of Idaho Real Estate Comm'n v. Nordling*, 135 Idaho 630, 635, 22 P.3d 105, 110 (2001).

Each of the elements of fraud must be established by clear and convincing evidence. *Lindberg*, 137 Idaho at 226, 46 P.3d at 522. "The issue as to whether fraud has been proven by clear and convincing evidence is for the determination of the trier of fact. On appeal that determination will not be reversed where supported by competent, substantial, though conflicting evidence." *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980) (quoting *Smith v. King*, 100 Idaho 331, 334, 597 P.2d 217, 220 (1979)).

It is clear from the district court's conclusions of law that it incorrectly applied the "preponderance of the evidence" standard instead of the "clear and convincing evidence"

---

[4] This is not intended as criticism. The district court's opinion was 47 pages in length and reflects that the district judge put a great deal of thought and energy into its preparation. It would be unreasonable for us to expect a detailed discussion of matters that would be mere surplusage.

standard when analyzing the Caravellas' fraud claim. Accordingly, we conclude that the district court erred in its analysis of the Caravellas' fraud claim.

**2. The district court's evidentiary standard error is harmless.**

This Court must "at every stage of the proceeding … disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Here, the district court applied a less rigorous evidentiary standard to conclude that eight of the nine elements of fraud had been proven. However, by diminishing the Caravellas' evidentiary burden, the district court's error affected neither of the parties' substantial rights. The error did not negatively affect the Caravellas because it made their fraud claim easier to prove by lowering the evidentiary bar. Likewise, the district court's error did not affect FDG's substantial rights. The district court ultimately found that that the Caravellas failed to prove Horn's knowledge of the falsity of his statements. Had the district court applied the correct evidentiary standard, the same result would have been reached—and likely more emphatically so. Because the district court's error did not affect the substantial rights of either party, we conclude that the error was harmless and will disregard it on appeal. Despite the district court's application of an erroneous evidentiary standard, the Caravellas ask this Court to find that they proved fraud by clear and convincing evidence.

**3. This Court may not find that the Caravellas established all nine elements of their fraud claim by clear and convincing evidence on appeal.**

The Caravellas argue that the district court's conclusion that they failed to establish Horn's knowledge of the falsity of his statements contradicts the district court's findings of fact. The Caravellas assert that, based on the facts found by the district court, the only legal conclusion that may be drawn is that Horn and FDG had knowledge of the falsity of their statements. The Caravellas also observe that the fourth element of fraud, relating to the speaker's knowledge of the falsity of the statements, may be satisfied by showing that the speaker made the statements with a reckless disregard for their truth. As Horn did not have the skills or knowledge to make representations about the condition or quality of the property, the Caravellas argue that all of Horn's statements regarding the structure's quality were made with a reckless disregard for their truth. In response, FDG argues that the district court correctly concluded that the Caravellas failed to establish their claim of fraud.

In *Faw*, this Court stated, "[t]he issue as to whether fraud has been proven by clear and convincing evidence is for the determination of the trier of fact." 101 Idaho at 389, 613 P.2d at

7

1340 (quoting *Smith*, 100 Idaho at 334, 597 P.2d at 220). An appellate court reviewing a fraud claim may only rule on whether the trier of fact's determination is "supported by competent, substantial, though conflicting evidence." *Id*. "It is not our role to reweigh the evidence." *In re Doe 2009-19*, 150 Idaho 201, 209, 245 P.3d 953, 961 (2010) (citing *Hogg v. Wolske,* 142 Idaho 549, 556, 130 P.3d 1087, 1094 (2006)). "Issues not raised below and presented for the first time on appeal will not be considered for review." *Higgins v. Larry Miller Subaru-Mitsubishi*, 145 Idaho 1, 6, 175 P.3d 163, 168 (2007) (citing *Excell Constr., Inc. v. State, Dep't of Labor*, 141 Idaho 688, 693, 116 P.3d 18, 23 (2005)).

This Court is unable to find that the Caravellas established their fraud claim by clear and convincing evidence. We have held that the determination of whether fraud has been established by clear and convincing evidence is for the trier of fact, not an appellate court on review. *Faw*, 101 Idaho at 389, 613 P.2d at 1340. This is because it is the duty of the trier of fact to weigh the evidence presented. Because this Court does not act as a trier of fact, we may not, for the first time on appeal, find that the Caravellas have proven all nine elements of fraud by clear and convincing evidence.

By asking this Court to find that they established their fraud claim by clear and convincing evidence, the Caravellas are merely asking this Court to reweigh the evidence considered by the district court. It is not this Court's role to reweigh evidence. *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 768, 291 P.3d 442, 451 (2012). It would be odd, indeed, for this Court to reverse the district court's factual determination that the Caravellas failed to prove by a preponderance of the evidence that Horn knew that his statements were false and to hold that they proved that proposition by clear and convincing evidence.

Much of the Caravellas' appellate argument attempts to persuade us that Horn acted with a reckless disregard for the truth, which they correctly note will satisfy the "knowledge of the falsity" element of fraud. The Caravellas cite to *Parker v. Herron*, 30 Idaho 327, 331, 164 P. 1013, 1014 (1917), for the proposition that: "Circumstances inconsistent with an honest, reasonable belief in the truth of the statements, or indicating a reckless disregard for the truth" are sufficient to establish the scienter element of fraud. The difficulty with the Caravellas' argument is that nothing in the record suggests that they ever advanced this theory before the district court. At oral argument, the Caravellas' counsel conceded that no such argument was presented to the district court. This Court does not address arguments raised for the first time on

8

appeal. *Barmore v. Perrone*, 145 Idaho 340, 343, 179 P.3d 303, 306 (2008). Accordingly, we affirm the district court's judgment dismissing the Caravellas' fraud claim.

**B. Horn's personal liability to the Caravellas.**

The district court found that Horn was not personally liable and thus, the Caravellas' award of contract damages, attorney fees and costs was assessed only against FDG. The Caravellas advance two arguments in support of their claim that Horn should be held personally liable. First, the Caravellas argue that Horn was the agent of an undisclosed principal. Second, the Caravellas argue that the corporate veil of FDG should be pierced because FDG was merely an alter ego of Horn.

The following is the entirety of the district court's conclusions of law regarding Horn's potential personal liability:

> 58. "In order for a corporation to be an alter ego of an individual, there must be (1) a unity of interest and ownership to a degree that the separate personalities of the corporation and individual no longer exist and (2) if the acts are treated as acts of the corporation an inequitable result would follow." *The Vanderford Co., Inc. v. Primary Residential Mortgage, Inc.*, 144 Idaho 547, 557, 165 P.3d 261, 271 (2007).
>
> 59. While Horn was not overly attentive to the formalities of entity ownership, the Court concludes that Caravellas failed to prove by a preponderance of the evidence that there was a complete unity of interest and ownership. Although Horn had complete control over the actions and finances of FDG, and treated its profits as his own personal income, this alone does not invalidate the LLC. The LLC owned separate assets at the time it did business with Caravellas. The names of "Frontier Development Group" and/or "Open Range Homes" were present on every correspondence, invoice, and the signage at the job site. The Court concludes that there was no evidence that Horn attempted to conceal the LLC from Caravellas. When Caravellas began making payments, they did so by making checks directly payable to FDG or Open Range Homes without complaint, reservation, or objection. The Court must conclude that Caravellas acquiesced to the fact they were dealing with an entity, and not Horn personally.
>
> 60. The fact that Horn has now allegedly left FDG with no means of satisfying a judgment against it does create serious equitable concerns for the Court, but this alone is not controlling of the Court's legal analysis.

Our analysis of the issues presented by the Caravellas' appeal is complicated by the absence of separate analysis of the two distinct legal theories that they have advanced. We will discuss these theories in turn.

> **1. Whether Horn disclosed his agency relationship with FDG prior to formation of the contract with the Caravellas.**

9

Horn registered FDG as a limited liability company to operate his construction business and assumed the business name "Open Range Homes." Prior to the Caravellas purchasing the property, Horn communicated with them by email. During the email exchanges, Horn used the email address, "builder@openrangehomes.com." Horn testified that when the Caravellas inspected the property in April of 2008, there was a sign erected on the property that read "Open Range Custom Homes." All of the invoices that the Caravellas received from Horn were printed on letterhead from "Frontier Development, LLC dba Open Range Custom Homes." Based on these facts, the district court concluded that the "Caravellas must have known they were dealing with FDG and Open Range Homes, and not Horn personally, because they sent at least five payments to FDG via checks made payable to 'Frontier Development Group, LLC' or 'Open Range Homes.' " The district court further stated that there was no evidence that Horn "actively attempted to conceal FDG's role in the transaction." Although the district court characterized it as a "close question," it ultimately concluded that: (1) Horn's email address; (2) the signage at the property; and, (3) the letterhead on the invoices adequately apprised the Caravellas that they were dealing with FDG and not Horn personally.

The Caravellas argue that the district court erred in concluding that Horn was not the agent of an undisclosed principal because Horn entered into the construction agreement without disclosing his principal. The Caravellas contend that Horn's failure to disclose his principal renders him personally liable because both the agent and his principal are liable parties to a contract if the principal is not disclosed before the contract is made. Relying on *Marco Distributing., Inc. v. Biehl*, 97 Idaho 853, 555 P.2d 393 (1976), the Caravellas further contend that Horn had the burden to establish that his agency relationship was disclosed prior to contracting. In concluding that Horn was not the agent of an unknown principal, the Caravellas argue that the district court made four errors. First, the district court shifted the burden of proof to the Caravellas. Second, the district court erred in looking to the invoice letterhead because none of the invoices were presented prior to the formation of the contract. Third, the district court's reliance on Horn's email domain name was misplaced because a domain name does not establish that the drafter of the email is acting as an agent of a principal with that domain name. Fourth, the district court improperly relied on the signage at or near the property because there

10

was no evidence as to where the sign was placed, how big it was, or whether it was legible and the Caravellas testified that they did not see the sign when they inspected the property.[5]

In response, Horn argues that substantial competent evidence supports the district court's conclusion. Horn directs us to the evidence identified by the district court and the fact that Louis Caravella was a sophisticated purchaser.

"It is a basic principle that an agent who enters into a contract on behalf of a corporation, but who neither discloses his agency nor the existence of that corporation to the third party, is personally liable to the third party." *McCluskey Commissary, Inc. v. Sullivan*, 96 Idaho 91, 93, 524 P.2d 1063, 1065 (1974). An agent assumes personal liability when the agent fails to disclose the agency relationship and the identity of the agent's principal "at or before the time of entering into the contract." *W. Seeds, Inc. v. Bartu*, 109 Idaho 70, 71, 704 P.2d 974, 975 (Ct. App. 1985) (citing *Gen. Motors Acceptance Corp. v. Turner Ins. Agency, Inc.*, 96 Idaho 691, 697, 535 P.2d 664, 670 (1975)). Agents attempting to shield themselves from personal liability have the burden of proving when their agency relationship with the principal was disclosed or revealed. *Marco Distrib., Inc.*, 97 Idaho at 858, 555 P.2d at 398 (citing Restatement (Second) of Agency, § 320). "A principal is 'disclosed' if, at the time of making the contract in question, the other party to it has notice that the agent is acting for a principal and of the principal's identity." *Gen. Motors Acceptance Corp.*, 96 Idaho at 697, 535 P.2d at 670. The "onus" is on the agent to clearly and affirmatively inform the other party to the contract of his or her agency relationship at or before the time of contracting. *In re Laraway*, 2010 WL 3703272, at *4 (Bankr. D. Idaho Sept. 13, 2010).

Here, the district court applied an erroneous legal standard and accordingly erred in its analysis of the Caravellas' claim that Horn was acting as an agent of an undisclosed principal. First, the district court shifted the burden from Horn and placed it on the Caravellas. The district court found that the Caravellas produced no "evidence that Horn attempted to conceal the LLC." However, the question the district court should have been answering was whether Horn met his burden of proving that he disclosed his agency relationship and the identity of his principal prior to contracting. The district court's misallocation of the burden of proof placed the Caravellas in the position of proving a negative.

---

[5] The sign was erected in 2006 when Horn began construction for Myers. Horn testified, "[t]hat particular sign said Open Range Custom Homes, but then gave information such as my phone number and email address, which was builder@openrangehomes.com."

Further, the district court relied on evidence that was irrelevant to this issue. We have long held that the agent must disclose his agency relationship and principal before or at the time of the contract. The invoices FDG sent to the Caravellas followed the formation of the contract and were therefore irrelevant to this issue.

The district court found that the signage erected at the building site "should have" put the Caravellas on notice of the agency relationship. The district court did not have the benefit of our recent decision in *Agrisource, Inc. v. Johnson*, No. 40340, 2014 WL 4057145 (Idaho Aug. 18, 2014). In *Agrisource*, we rejected the notion that a contracting party has a duty to investigate whether an agency relationship exists and, if so, to determine the identity of the principal. Rather, we held that "the agent must inform the other party of his principal and agency and not rely on what that party 'should have known.'" *Agrisource*, 2014 WL 4057145, at *4. "An agent gives sufficient notice of his principal's identity when an agent informs the other party of the entity he represents with enough specificity for the other party to actually know it is dealing with the particular entity. This includes specificity as to the company's name and corporate existence." *Agrisource*, 2014 WL 4057145, at *6 (citing *Interlode Constructors, Inc. v. Bryant*, 132 Idaho 443, 447, 974 P.2d 89, 93 (Ct. App. 1999)).

In *Agrisource*, we discussed Judge Myers' decision in *Laraway* with approval, adopting his analysis of issues relating to an agent's disclosure of his principal. *Id*. at *5. The facts of *Laraway* closely parallel the factual and legal situation surrounding the job site signage in this case. In *Laraway*, a custom home builder, Laraway, agreed to construct a residence for the Welches. *Laraway*, 2010 WL 3703272, at *1. Disagreements as to increased costs and unpaid subcontractors resulted in the agreement falling apart and forcing Laraway's principal, Diamond Ridge Construction, Inc., to file a voluntary petition for chapter 7 bankruptcy relief. *Id*. at *2–3. Attempting to avoid personal liability, Laraway argued that his agency with Diamond Ridge Construction, Inc. was disclosed to the Welches. *Id.* at *4. Specifically, Laraway testified that when he met the Welches he gave them a "Client Introduction Packet," which referenced Diamond Ridge Construction, Inc. *Id*. Laraway further testified that there was a framed copy of Diamond Ridge Construction, Inc.'s contractor license on the wall in the office where he met with the Welches. *Id*. However, the *Laraway* court concluded that these facts were insufficient to establish disclosure, stating:

12

> The "Client Introduction Packet" and the presence of the contractor's license in Laraway's office did not sufficiently disclose to the Welches that Laraway was acting as the agent of Diamond Ridge Construction, Inc. At trial, [the Welches] did not recall receiving the "Client Introduction Packet," and even if the Welches had received such a packet, there was no evidence that they read it, or that they would have understood it to mean they were contracting with Diamond Ridge Construction, Inc., not Laraway. [The Welches] further testified that [they] never noticed the contractor's license on the wall of Laraway's office. The onus was on Laraway to clearly indicate to the Welches, before or at the time of the Contract, that he was acting as the agent of Diamond Ridge Construction, Inc.

*Id*. Like the Welches in *Laraway*, the Caravellas both testified that they did not see any signage at the construction site when they were inspecting the property.

The only remaining fact that the district court addressed pertaining to this issue is the email address Horn used to communicate with the Caravellas prior to contracting, builder@openrangehomes.com. There is nothing about the domain name "openrangehomes.com" that discloses either Horn's agency or the identity of his principal, FDG. In the absence of any evidence that is susceptible of the inference that Horn "affirmatively and clearly disclose[d] his agency and principal," *Agrisource*, 2014 WL 4057145, at *5, we reverse the district court's holding that Horn was not personally liable for the Caravellas' losses due to the breached contract.

### 2. Whether Horn is personally liable for the debts of FDG under the alter ego doctrine.

In light of our holding that Horn is liable for the damages for breach of contract, we do not reach the Caravellas' claim that he is personally liable for the debts of FDG under the alter ego doctrine.

## C. No attorney fees are awarded on appeal.

### 1. Idaho Code section 12-120(3).

Both FDG and the Caravellas argue that they are entitled to attorney fees on appeal pursuant to Idaho Code section 12-120(3). Although we could decide this issue on the simple ground that no party has prevailed in this appeal, we deem it desirable to reiterate our recent interpretation of Idaho Code section 12-120(3). This code provision entitles the prevailing party in any civil action arising from a commercial transaction to recover attorney fees. "All transactions other than those for personal or household purposes are considered commercial transactions." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 755, 274 P.3d 1256, 1270 (2012). "[I]n order for a transaction to be commercial, each party to the transaction must enter the transaction

13

for a commercial purpose." *Id.* at 756, 274 P.3d at 1271. In *Goodspeed v. Shippen*, 154 Idaho 866, 303 P.3d 225 (2013), we considered an appeal arising from the Goodspeeds' purchase of a home. Noting our decision in *Carrillo*, we stated: "As this transaction lacks the required symmetry of commercial purpose, I.C. § 12-120(3) does not apply." *Id.* at 874, 303 P.3d at 233. In this case, the Caravellas' purpose for entering into the agreement with Horn and FDG was to construct a house for their personal use; therefore the transaction was not commercial. For this reason, we do not award attorney fees under Idaho Code section 12-120(3).

## 2. Idaho Code section 12-121.

FDG requests an award of attorney fees on appeal pursuant to Idaho Code section 12-121. "Section 12–121 'permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation.'" *Ravenscroft v. Boise Cnty.*, 154 Idaho 613, 617, 301 P.3d 271, 275 (2013) (quoting *Gerdon v. Rydalch*, 153 Idaho 237, 245, 280 P.3d 740, 748 (2012)). No party has prevailed in this appeal. Therefore, we do not award attorney fees on appeal.

## IV. CONCLUSION

We affirm that portion of the district court's judgment dismissing the Caravellas' fraud claim, and reverse that portion of the judgment dismissing the Caravellas' claims against Horn personally. We do not award attorney fees or costs on appeal.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.

14